THE STATE EX REL. S. D. WORSHAM, Appellant, v. PAD ELLIS ET AL. —44 S. W. (2d) 129.

Division Two, December 1, 1931.

W. I. *Jackson* and N. J. *Craig* for appellants.

FITZSIMMONS, C.—This is a proceeding in the nature of *quo warranto,* instituted by the Prosecuting Attorney of Wright County, in the circuit court of that county, to oust the respondents from the office of school directors of Ellis School District No. 37, situated in Van Buren Township, Wright County.

The prosecuting attorney acted at the relation of a resident taxpayer of the school district having children of school age. It is a statutory proceeding authorized by Section 1618, Revised Statutes 1929 (Sec. 2066, R. S. 1919). Upon trial, the circuit court gave judgment for the defendants and relator appealed to the Springfield Court of Appeals. The latter court rightly transferred the cause to this court which has exclusive jurisdiction of proceedings involving "the title to any office under this State." [Const. Art. VI, Sec. 12, and Sec. 5 of Amendment of 1884 to Art. VI.] The office of

school director is an office under this State and hence the appeal should have been to the Supreme Court. [State ex inf. Sutton v. Fasse, 189 Mo. 532, 88 S. W. 1; State ex inf. Attorney General v. Parrish, 307 Mo. 455, 270 S. W. 688.]

The petition or information charges that respondents were the directors of Ellis School District No. 37 during the school year 1926-1927; that the district received state aid during that year under the provisions of Section 9285, Revised Statutes 1929 (Sec. 11211, Amended Laws of 1921, p. 637); that respondents employed a teacher at a salary of eighty dollars per month for the school year 1926-1927; and that the district school was conducted for only seven months that year, although, at the time of final dismissal, there remained a treasury balance of $129.45 applicable to the payment of the teacher's salary. Section 9195, Revised Statutes 1929 (Sec. 11124, R. S. 1919), provides that, whenever any school district shall fail or refuse for the period of one year to provide for an eight months' school in such year, provided a levy of forty cents on the one-hundred dollars' valuation, together with the public funds and cash on hand will enable them to have so long a term, the same shall be deemed to have lapsed as a corporate body, and the territory theretofore embraced within such lapsed district shall be deemed and taken as unorganized territory, and the same or any portion thereof may be attached to any adjoining district or districts for school purposes. Relator seeks to oust respondents from the office of school directors on the ground that Ellis School District No. 37 lapsed under the statute when it held only seven months of school in the scholastic year 1926-1927. Respondents by their answer deny that there was on hand, at the time that the school was dismissed or thereafter, a balance in the teachers' fund of $129.45, after the payment of all issued warrants. The directors allege that the school was dismissed after seven months session on account of lack of sufficient funds with which to conduct the school for the remaining month of the scholastic year.

At the trial, the parties stipulated, among other things, that on June 30, 1927, the last day of the school year, 1926-1927, there was on hand with the township treasurer $129.45 to the credit of the teachers' fund for Ellis School District; and that a levy of sixty-five cents on the $100 valuation had been made for the school year in question, of which levy forty cents was for the teachers' fund and twenty-five cents for incidentals. During the year the teacher, Mr. Herrick, made two trips to the office of the township treasurer to get a salary warrant cashed. This was due to the fact that there were not funds enough on hand to pay the warrant. With this in mind, one of the directors advised the teacher toward the close of the school year that "he had better keep himself informed as to whether

there would be enough money for eight months." The teacher obtained a statement from the township treasurer, showing a balance to the credit of the teachers' fund of $155.44 from which was to be deducted one month's pay of $80. The teacher presented this statement at a school meeting, and declared that he was unwilling to go ahead "unless the school board make up the deficiency." Neither the teacher nor the directors knew whether the balance meant money collected or provided by levy. The directors would not assume liability for any deficiency. They had an eight months' contract with the teacher, but he said "he would quit under a written agreement." This was made and the school was closed. The record does not show what was the nature of the agreement, but the inference is that it was a cancellation of the contract of employment, and was prompted by the mutual fears of the directors and teacher that there would not be enough funds on hand with which to pay the last month's salary. The township treasurer testified that he made reports to the school district of the condition of its funds on March 25, June 1, and October 1 of each year, as was his duty, and that he reported to the Ellis School District on March 25, 1927, a balance in the teachers' fund of $155.44 from which a warrant for $80 was subsequently paid. Collections received after this report and after the school meeting at which the teacher had quit left a balance in the fund of $129.45. He did not report this to the board, but he thought that he told one of the directors about it. There were desultory efforts to reopen the school for the final month. One director asked Mr. Herrick, the teacher, to come back "and teach what there was out." Mr. Herrick declined, and the director appealed in vain to the teacher who had been employed for the fall term. Another director talked to nearly all the patrons of the school, but they said that they could not send back their children if the school were opened for the remaining month. Respondents did not file a brief. The record does not disclose any reason or theory of the trial court for the judgment given in behalf of defendants.

I. Relator urges as his first ground for the reversal of the judgment, that the court, over objection, admitted evidence on behalf of respondents that the school was closed because respondents thought that there were insufficient funds with which to pay the salary of the teacher. In support of this relator argues that under Section 11138, Revised Statutes 1919 (now Sec. 9210, R. S. 1929) relating to teachers' contracts, it is the duty both of the school board and of the teacher to apprise themselves of the amount of funds provided with which to pay the teacher before any contract of employment is made.

In the view which we take of this case, this and the further assignment of error, to be noticed later, are without merit. But, answering this objection directly, the statutes seem to contemplate that a teacher be employed by contract before a school district can apply for state aid. The clear meaning of Section 9285, Revised Statutes 1929 (Sec. 11211, Amended Laws 1921), upon which relator relied for his writ in this case, is that a school district must show to the State Superintendent of Public Schools that it anticipates a deficit in the next school year in order that it may be entitled to receive from the State Treasurer a sufficient amount to make up this deficit. This is especially true in the case of common school districts (Sec. 9194, R. S. 1929) where the teacher's salary is the greater part of the school budget. Ellis School District No. 37 in Wright County is a common school district. Section 9285, Revised Statutes 1929, requires that directors of districts desiring to avail themselves of state aid shall meet and, on or before June 30, shall furnish to the county clerk an estimate of the "probable deficit." The county clerk, on or before July 15, is required to furnish to the Superintendent of Public Schools a list of the districts in his county making application for state aid, showing the amount of aid estimated by each district. And the State Superintendent of Public Schools has until August 15 to apportion the public school fund applied for the benefit of the public schools among the different counties. [Sec. 9257, R. S. 1929.] When to these statutory formalities we add the well-known custom of hiring teachers in April and May for the school term beginning in September, we see that it is quite impossible for school directors and teachers to inform themselves of the amount of money to be available before contracting together. The statute (Sec. 9285, R. S. 1929) fixes the limit of teachers' salaries and that limit was not exceeded in this case.

II. Relator further contends that the judgment of the trial court was against the law and the evidence, and that, in the case as made, the court had no alternative but to give judgment ousting respondents for the reason that Ellis School District No. 37 had forfeited its organization under Section 9195, Revised Statutes 1929 (Sec. 11124, Amended Laws 1921). This brings us to an examination of the discretion of a court sitting in judgment in a proceeding in the nature of *quo warranto*. As has been stated, this is a statutory, not a common law proceeding. It is settled that, in cases of this sort, the court has discretion in the granting of the absolute writ after a hearing.

State ex inf. Attorney General v. School District, 314 Mo. 315, 284 S. W. 135, was an original proceeding before the Supreme Court

en banc challenging the authority of the respondent school district to exercise jurisdiction over certain territory which relators contended belonged to other school districts. The proceeding was dismissed by this court. After ruling against relators the several points made, the court in its opinion said (284 S. W. 1. c. 140): ''The granting of a writ of *quo warranto* is a matter of discretion. The court will not grant it unless some good purpose can be served by it. [State ex rel. v. Cupples, 283 Mo. 1. c. 145, 223 S. W. 75.]'' After pointing out the lowered school service which would result from granting the writ the court further said (284 S. W. 1. c. 140): ''Thus without any evidence that the school conditions would be improved, but with a situation which suggests that they would be impaired, . . . this court should exercise its discretion and deny the relief sought.''

State ex inf. v. McClain, 187 Mo. 409, 86 S. W. 135, was an appeal by the relator from a judgment of the circuit court, denying a writ of *quo warranto* to oust the respondents from the office of school directors of a school district in Jefferson County. The judgment of the trial court was affirmed, and the rule of discretion was stated.

State ex rel. Jackson v. Town of Mansfield, 99 Mo. App. 146, 72 S. W. 471, was a proceeding in the nature of *quo warranto* to deprive the town of Mansfield in Wright County of its franchises as a city of the fourth class upon the ground that it was illegally incorporated as such. There was judgment for defendants and relator appealed. The St. Louis Court of Appeals affirmed the judgment and in an opinion by GOODE, J., said concerning discretion in *quo warranto*: ''The courts of this country have come to exercise in the final disposition of *quo warranto* cases, that discretion which was originally only exercised in allowing the information to be filed; and they have come also to exercise some discretion when the proceeding is instituted by the State on the information of a state officer. These *quo warranto* proceedings are now commonly instituted of course, and without leave; and, if there is to be any discretion used about the relief at all, it must be used in delivering judgment. So, too, as the proceeding may be instituted at the relation of any prosecuting attorney, the sanctity which originally attached to it when the information was exhibited by a great officer like the Attorney General of England, or the Attorney General of the United States or of a state, who is supposed to represent in a peculiar decree the prerogatives and sovereignty of the State, no longer exists; and the remedy has grown to resemble ordinary civil litigation and at no stage, considering its present characteristics and the modern practice tolerating the filing of informations as a matter of course,

can discretion be so wisely or justly exercised as after the cause has been heard and the court is fully advised as to the facts.''

In a case involving the life of a common school district in rural parts the courts should be most prudent in the exercise of the prerogative and sovereignty of the state by the power of the writ of *quo warranto*. As has been stated no declarations of law or written memoranda appearing in the record reveal what prompted the trial court to deny a writ of *quo warranto*. It is a right and satisfying presumption that he exercised a sound discretion in behalf of a ''little red school house.''

III. Relator leans heavily upon the case of State ex rel. v. Claxton, 263 Mo. 701, 173 S. W. 1049. In that case, relators sued in the circuit court to oust respondents from the office of directors of a school district in Wright County, for the reason that the district had lapsed because respondents had held but five months school in the district. The trial court gave judgment for respondents, but this court reversed the judgment and remanded the cause with directions to the circuit court to enter up judgment of ouster. In that case it was clear that there were funds sufficient for the maintenance of the school for eight months and that respondents had been grossly delinquent in their duties as directors. In these two respects the cited case differs from the instant one.

Finding no error in the record, the judgment of the trial court is affirmed. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by Fitzsimmons, C., is adopted as the opinion of the court. All of the judges concur.