In the Matter of the Application of ED LAWRENCE, O. H. GRAMLING, CHARLES S. DICKSON and OGDEN ROMINE, as Judges and Canvassers of Absentee Ballots Cast in the General Election in Sullivan County, Missouri, November 7, 1944. Ex Parte O. H. GRAMLING and OGDEN ROMINE, Appellants, v. ED LAWRENCE and CHARLES S. DICKSON.—No. 39378.—185 S. W. (2d) 818.

Court en Banc, March 5, 1945.

*P. M. Marr, L. E. Atherton* and *M. E. Montgomery* for appellants.

1030

*Charles E. Rendlen, Alvin B. Walker* and *Arthur D. Campbell* for respondents.

 LEEDY, J.—This is a suit for a declaratory judgment brought by the judges and canvassers of absentee ballots cast in the General Election in Sullivan County, November 7, 1944. Its purpose is to determine the validity of certain absentee ballots, 59 in number, "respectively applied for and respectively cast by legally qualified electors [not in military or naval service] of the precinct, county and state while within the State of Missouri," but which were challenged for the sole reason "that such respective voters were not within the State of Missouri on the day of the General Election." The judgment of the trial court, now before us on this appeal, was: "The law is declared to be that it is a lawful ground of challenge that a civilian absentee voter was out of the state on the day of election, to-wit, November 7, 1944, for the entire day."

The applicable constitutional and statutory provisions are, respectively, Sec. 9, Art. VIII, Mo. Const.,[1] and Sec. 11470 R. S. '39, as amended, Laws 1944, Ex. Sess., p. 19, Sec. 11470 Mo. R. S. A.[2] Art. VIII of the constitution, of which the provision in question forms a part, was submitted by the Constitutional Convention of 1922-23 as a revised and amended substitute for the then existing article on "Suffrage & Elections." It was adopted at the special election held February 26, 1924.

The case turns upon the meaning of that portion of said constitutional provision which authorizes the legislature to make provision for absentee voting by "qualified electors absent from their counties but within the state . . . " Respondents contend it "requires that a qualified civilian absentee voter be 'within the state' *on election day* to 'be enabled by law to vote.' " Appellants say that said "section contains no requirement that such an elector must be in the state *on the day of election*;" that it simply provides that the legislature may pass a law enabling an absent qualified voter to cast his ballot anywhere within the state." We think that, standing alone, the language in question is so uncertain, and of such doubtful import as to be susceptible to either of these divergent interpretations. In this situation we turn to extrinsic aids of construction.

---

[1]"Qualified electors, absent from the state on military or naval service shall, and qualified electors absent from their counties but within the state may, be enabled by law to vote at general or special elections." [Sec. 9, Art. VIII, Const. of Mo.]

[2]"Any person being a duly qualified elector of the State of Missouri, other than a person in military or naval service, who expects to be within the State of Missouri but absent from the county in which he is a qualified elector on the day of holding any special, general or primary election at which any presidential preference is indicated or any candidates are chosen or elected, for any congressional, state, district, county, town, city, village, precinct or judicial offices or at which questions of public policy are submitted, may vote at such election as hereinafter provided." [Sec. 11470 R. S. '39, as amended, Laws 1944, Ex. Sess., p. 19, Sec. 11470 Mo. R. S. A.]

Looking to the previous state of the organic and statutory law, and the objects and purposes of the amendment in question, we find that the first constitutional provision in relation to absentee voting was submitted by the 50th General Assembly [Laws 1919, p. 763], and adopted in the 1920 General Election [Laws 1921, p. 710], the text of which is set forth in the margin.[3] But the legislature had theretofore provided for absentee voting (Sec. 4751 R. S. '19; Laws 1913, p. 323, as amended Laws 1917, p. 274) under which the absent elector was required to present himself, during voting hours, "at the polls in any precinct in the state where he may be on such election day." He was there given a blank ballot which, after being marked by the voter, the election officials were required to return to the proper county. Thus, by the statutory scheme then in existence, the voter was, of necessity, required to be within the state on election day, and this had been so some nine years before the Constitutional Convention convened May 15, 1922. At the ensuing November election of that year, the people adopted another amendment which greatly broadened the 1920 amendment (which had been limited to those in military service) by providing as follows: "The legislature is hereby authorized and directed to enact proper and suitable laws, providing the means and method by which any absent qualified elector may vote an absentee ballot at all elections by the people, whether such absent voter be within or without this state." [Laws 1923, p. 392.] So that at the time of the framing, submission and adoption of the provision now under scrutiny, there was a constitutional mandate to the legislature to provide for voting by absent electors "whether . . . within or without this state." This meant, of course, that the marking of the ballot—the manual act of voting—might be done as well without as within the borders of the state. There was never any statutory implementation of this provision other than the earlier enacted statute, which continued to remain unchanged until 1933. With these matters in mind, the inquiry is whether the change wrought by the 1924 amendment was directed at the matter of physical presence of the voter within the state on the very day of election, or was it intended to do away with authorization of what might be called out-of-state voting? We think the latter is clearly evident upon a consideration of the history of the constitutional and statutory sanctions of the practice of absentee voting. To hold otherwise would be to say that

[3]Section 1. That section 11 of article 8 of the Constitution of Missouri, reading as follows: 'No officer, soldier or marine in the regular army or navy of the United States shall be entitled to vote at any election in this state,' is hereby repealed.
"Sec. 2. That in lieu of section 11, article 8 of the Constitution of Missouri, hereby repealed, there is enacted the following new section to be known as section 11, article 8, viz.: The legislature shall, by general law, make provision enabling qualified electors of this state, absent from the state on acount of military service, to vote at general and special elections."

1034

the then existing statutory requirement of presence within the state, as an incident of the process of voting, was merely continued without change. Such, we think, was not the case.

Pursuant to the 1924 amendment, the legislature in 1933, by the adaptation of an Illinois statute [now Sec. 462, et seq., Ill. Rev. Stat. 1939] provided for absentee voting by any qualified elector "who expects in the course of his business or duties to be absent from the county" on election day. [Laws 1933, p. 218.] Under it (as well as the present statute, Sec. 11470), an absentee ballot could be applied for and cast as much as 30 days prior to the date of election. The affidavit was (and is) required to be executed before an officer authorized by law to administer oaths in Missouri. In 1944 the legislature enacted the present statute (same section number) which bases the right of civilian absentee voting on the expectation of the elector that he will be "within the State of Missouri but absent from the county" on election day. Under the present scheme, if such a voter casts his absentee ballot, say ten days before the date of election, and is thereafter unexpectedly called out of the state and actually absent therefrom during the whole day of election, he loses his vote, if the interpretation contended for by respondents is correct. Whereas, the same individual might give validity to his said ballot by the mere act of returning within the borders of the state, for any length of time, however short, on the day of election. Such resulting anomalies are not within the spirit of the amendment, nor do we think they are compelled by the letter thereof, and should be avoided. Our view is that it was not the purpose of the amendment to require mere physical presence within the state on the day of election as a condition of eligibility to vote a civilian absentee ballot. This accords with that well-recognized and wholesome rule in Nance v. Kearbey, 251 Mo. 374, 158 S. W. 629: "Election laws must be liberally construed in aid of the right of suffrage." For the reasons noted, the judgment is reversed, and the cause remanded with directions to enter a new judgment in conformity with the views herein expressed. All concur, except *Gantt, J.*, absent.