164

**Carl ROBERTS, Appellant,**

v.

**L. M. DOTSON, Appellee.**

No. 10299.

Court of Civil Appeals of Texas.

Austin.

Oct. 7, 1954.

Cofer & .Cofer, Austin, for appellant.

Fred L. Blundell, Tom Gambrell, Lockhart, for appellee.

PER CURIAM.

This is an election contest in which appellant, Carl Roberts, filed suit contesting the second Democratic primary nomination of L. M. Dotson, appellee, for the office of Sheriff of Caldwell County. Appellee is the present incumbent of such office.

The final vote tabulation as determined by the trial court gives appellee a 42 vote majority.

Appellant challenges and briefs the validity of 45 absentee votes which fall into two classes, each class containing more than 4 votes; hence it is incumbent upon appellant to successfully challenge the validity of both classes of votes in order to prevail in this proceeding.

The first class of votes was challenged upon the ground that appellee, without any express authority from the voter, wrote his own mailing address "P. O. Box 422" on the application for a ballot as the return address to which the ballot should be·sent and to which address the ballot was actually sent.

The second class of votes was challenged upon the ground that the Notary Public who swore the voter to the affidavit on the envelope in which the ballot is returned to the County Clerk also assisted the voter in marking the ballot thus violating Art. 5.05 of the Election Code, V.A.T.S., which

provides, in part, that in case of a voter's physical disability the ballot may be marked by a witness at the direction of the elector but in such manner that the Notary or other officer officiating " * * * cannot know how the ballot is marked * * *."

We have concluded that the challenge to the first class of votes must be overruled which conclusion makes unnecessary and inappropriate consideration of the challenge to the second class of votes.

Appellee obtained from the County Clerk blank applications for absentee ballots which he gave to his wife. Mrs. Dotson called upon the voters, mostly colored, and inquired if the elector would vote for her husband for Sheriff. Upon receiving a favorable answer Mrs. Dotson assisted in filling in the application and advised the voter that a Notary Public would come out and help in voting. The applications so taken by Mrs. Dotson were delivered to her husband who then procured proper doctor's certificates as to the voter's physical inability to appear at the polling place on election day.

Contestee wrote on these applications "Box 422," his own personal box, as the return address to which the ballot was to be sent and in so doing, in some instances, drew a line through the elector's actual home address.

The ballot applications and doctor's certificates were then mailed to the County Clerk who, in due course, mailed the ballots to the voters but addressed to "Box 422." These ballots, unopened, were received by contestee and delivered to Louise Whitis, a Notary Public, and W. H. Hill, brother-in-law of Mrs. Dotson, Justice of the Peace and ex-officio Notary Public.

Mrs. Dotson requested Judge Hill to go to the residences of the various voters whose ballots were delivered to him and furnished him a conveyance and driver for this purpose.

Judge Hill testified that the envelopes containing the ballot and ballot return envelope were sealed and handed by him to each voter in such condition and that each voter personally opened the outer envelope and that each voter, except in cases where he assisted and not in this vote class, personally marked the ballot without his knowledge of how the vote was cast and that the vote envelope was sealed and he then took the voter's oath to the affidavit on the ballot envelope. Judge Hill personally deposited many of the return envelopes in the mail.

There is no evidence in this record of any fraud, coercion or intimidation on the part of any person and there is no evidence that any person was deprived of a lawful vote or that any vote was not freely cast by the voter for the person of his choice.

The only statute which appellant cites as having been violated in this connection is that portion of Article 5.05, supra, which provides that when the County Clerk receives a proper application for an absentee ballot it shall be his duty to forthwith mail" * * * to such elector a blank official ballot and ballot envelope * * *."

The statute does not direct that the ballot be sent to the elector's residence although this direction would be presumed in the absence of instructions to the contrary. Appellant concedes that the statute does not necessarily require that the ballot be mailed to the elector's residence when he says "Contestant would not contend that a voter would not be entitled to have his absentee ballot mailed to an address which might suit his convenience."

Certainly this is the practical effect of what was done here although the method pursued by appellee was not entirely regular and was one which, though effective, cannot be fully commended.

Appellee should not have altered the applications for ballot without express authority from the elector even though the circumstances here were such as to justify him in sincerely believing that what he did was in conformity with their wishes. Confirmation of this is in the fact that no elector objected or complained that the ballot was not mailed directly to him.

We must remember that these voters were physically disabled and that unless appellee or someone else equally zealous had put himself to considerable trouble and expense these votes, in all probability, would not have been cast.

It is to the public interest that all qualified electors vote and the courts should lend encouragement to those who strive towards this end and even though selfish interest may be the dominating motive. It is only when qualified electors are prevented from or deterred in voting that judicial alarm should be exhibited.

In the total absence of fraud or even the suggestion of fraud and in the absence of the violation of any specific statute we have no just reason and no desire to avoid the will of a majority of the qualified electors of Caldwell County.

The judgment of the trial court is affirmed.

Affirmed.