STATE of Missouri ex rel. the SCHOOL DISTRICT OF the CITY OF JEFFERSON, COLE COUNTY, Missouri, Relator,

v.

Haskell HOLMAN, State Auditor, Respondent.

No. 49009.

Supreme Court of Missouri,

En Banc.

Oct. 9, 1961.

James T. Blair, Jr., Henry Andrae, John E. Burruss, Jr., Jefferson City (Hendren & Andrae, Jefferson City, of counsel), for relator.

Thomas F. Eagleton, Atty. Gen., C. B. Burns, Jr., and J. Gordon Siddens, Asst. Attys. Gen., for respondent, Haskell Holman, State Auditor.

Alden S. Lance, Raymond O. Sears, L. Glen Zahnd, Savannah, for intervenor.

Claude T. Wood, Richland, Weldon W. Moore, Rolla, for Clark D. Nichols and others, amici curiae.

Donnelly & Donnelly, Robert T. Donnelly, Lebanon, Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, O. J. Taylor, Springfield, amici curiae.

WESTHUES, Judge.

This is a mandamus proceeding filed in this court by the School District of the City of Jefferson, Cole County, Missouri, wherein it seeks to compel the State Auditor to register a bond which is one of a number of bonds authorized by the voters of the school district at an election held on June 27, 1961. In the return filed by the State Auditor, all of the material allegations of the petition were admitted except the allegation that the bonds were authorized by a two-thirds majority of the electors voting at said election. It is admitted that at the election 5,773 votes were cast in favor of the bond issue and 2,863 against. Of the 5,773 favorable votes, 596 represented absentee ballots and of the 2,863 negative votes, 44 were absentee ballots. The State Auditor takes the position that the absentee ballot law does not authorize voting by absentee ballots in school elections held on the question of voting bonds for construction of school buildings. If the State Auditor is correct in his contentions, then obviously the voters did not approve the issue of bonds by a two-thirds majority. On the other hand, if the absentee ballots are legal, the bond issue received approval by a two-thirds vote.

The cause was submitted to this court on briefs filed by the Relator School District, by the Attorney General representing the State Auditor, and by interested parties as amici curiae.

■ The question to be decided is whether the absentee ballot law applies to elections held in school districts wherein the voters are called upon to vote for or against a loan as authorized by Section 165.040 RS Mo 1959, V.A.M.S. (All statutory references are to said revision unless otherwise indicated.) To answer this question, it is necessary to examine the law applicable to absentee voting. We shall begin by quoting Sec. 7, Art. VIII, Constitution of Missouri of 1945, V.A.M.S., as follows: "Qualified electors of the state who are absent, whether within or without the state, may be enabled by general law to vote at all elections by the people." We note here that the constitutional provision just quoted authorizes the legislature to enact laws to enable electors who are absent from their voting place to vote at *all* elections by the people.

The legislature, in 1949, enacted the present statute applicable to absentee voting. See 1949 Laws, p. 263, Sec. 11470. This section is now Sec. 112.010. The section reads: "Any person being a duly qualified elector of the state of Missouri, other than a person in military or naval service, who expects to be absent from the county in which he is a qualified elector on the day of holding any special, general or primary election at which any presidential preference is indicated or any candidates are chosen or elected, for any congressional, state, district, county, town, city, village, precinct or judicial offices or at which

questions of public policy are submitted, or any person who through illness or physical disability expects to be prevented from personally going to the polls to vote on election day, may vote at such election as herein provided."

In determining what elections are included within the absentee voting laws, it is important to decide at the outset whether the law should be strictly construed or should a liberal construction be applied. In the brief, respondent Auditor, says, "Absentee voting laws being in derogation of the common law are strictly construed. Straughan v. Meyers, 268 Mo. 580, 187 S.W. 1159; 29 C.J.S. Elections Section 210, page 297." That same contention is made in one of the briefs filed as amici curiae.

We are not confronted with the question of what a voter must do and under what circumstances a voter may cast an absentee ballot. What is before us is at what elections may a voter who comes within the provisions of the absentee voting laws cast an absentee ballot. In this respect, the law must be liberally construed. Our statute, Sec. 1.010, so provides. This court en banc has so held in unmistakable language. Note what was said in Nance v. Kearbey, 251 Mo. 374, 158 S.W. 629, loc. cit. 631(2): "Election laws must be liberally construed in aid of the right of suffrage." This statement was quoted with approval by this court en banc in the case of Application of Lawrence, 353 Mo. 1028, 185 S. W.2d 818, loc. cit. 820. In the Nance case, supra, the court further stated that "The uppermost question in applying statutory regulation to determine the legality of votes cast and counted is whether or not the statute itself makes a specified irregularity fatal. If so, courts enforce it to the letter. If not, courts will not be astute to make it fatal by judicial construction." See also Opinion of the Justices, 152 Me. 219, 130 A.2d 526, 528, and Roberts v. Dotson, Tex. Civ.App., 272 S.W.2d 164, loc. cit. 166(3).

In construing a statute or law, it is always important to keep in mind the purpose intended to be accomplished by its enactment. The history of a statute is at times helpful. We shall not review the history of either the constitutional provisions, Art. VIII, Sec. 7, supra, or the statutory law enacted in pursuance thereof, Sec. 112.010, supra. The history may be found in the notes following the sections of the constitution and the statute. We desire, however, to state that an examination of the history of the absentee voting law will disclose that the law has been extended from time to time so as to make it applicable to more elections and to make it more convenient for casting absentee ballots. In fact, the present constitutional provision in specific language authorizes the legislature to provide absentee voting at *all* elections. Following the adoption of the constitutional provision, the legislature, in 1949, amended Sec. 112.010 and, in our opinion, extended its application.

With the above in mind, let us now examine the wording of the statute, especially the words and phrases that are the subject of the present controversy to discover whether the statute, Sec. 112.010, supra, includes within its terms a special election such as an election to determine whether a school district shall become indebted for the construction of school buildings. The statute, omitting matters not germane to the issue before us, provides that the law is applicable to "any special * * * election at which any * * * candidates are chosen or elected, for any * * * district * * * offices or at which questions of public policy are submitted, * * *."

The first question is, does the word "district" include a school district? Our answer is in the affirmative. In 27 C.J.S. p. 617, it is said, in speaking of the meaning of the word "district," that "In its ordinary meaning, the word is commonly and properly used to designate any one of the various divisions or subdivisions into which the State is divided for political or other purposes, and may refer either to a congressional, judicial, senatorial, representative, school, or road district, depend-

ing always on the connection in which it is used." And in 78 C.J.S. Schools and School Districts § 24, p. 656, it is stated that "A school district, or a district board of education or of school trustees, or other local school organization, is a subordinate agency, subdivision, or instrumentality of the state, performing the duties of the state in the conduct and maintenance of the public schools; * * *." Numerous cases from various states, including Missouri, are there cited in support of the text. We rule that school districts are included within the terms of the statute.

In the briefs filed in support of the State Auditor's contention, the case of State ex rel. Hand v. Bilyeu, Mo.App., 346 S.W.2d 221, is cited as authority that Sec. 112.010, supra, does not apply to school districts. The question now before us was not before the Springfield Court of Appeals in that case. There, a school meeting was held under the provisions of Sec. 165.200 applicable to common school districts. The meeting was held as provided for in that section. An annexation question was there presented to those present at the meeting. The election was conducted in accordance with the provisions of Sec. 165.267(1). It will be noted that the statute provides that at such meeting "each person desiring to vote shall advance to the front of the chairman and deposit his ballot in a box to be used for that purpose. When all present shall have voted, the chairman shall appoint two tellers, who shall call each ballot aloud and the secretary shall keep a tally and report to the chairman, who shall announce the result; and if a majority of the votes cast are for organization, the chairman shall call the next order of business." Any expression in the opinion in the State ex rel. Hand case, supra, concerning the question of whether the absentee voting laws were appplicable to elections in school districts held under the election laws was obiter dictum. In that case, there was a school meeting, not an election wherein there were polling places and election judges as in the case now before us.

■ Having decided that the legislature in employing the word "district" made the absentee voting laws applicable to elections held in school districts, our next question is, does the phrase, "questions of public policy," include an election submitting the question of whether a debt shall be incurred for the purpose of constructing school buildings? Our answer to that question is likewise in the affirmative.

Respondent Auditor, in the brief, says that "The reason why public policy is thought of only in a negative concept is because it is only when the Constitution or laws of the state have expressly prohibited certain conduct or where for a very long time certain conduct is considered almost universally by responsible men to be violative of good morals in our society. Thus, when the subject of 'public policy' is examined closely, it appears that the Legislature, by the use of these words in Section 112.010, has failed to define their meaning. Perhaps the reason the Legislature did not define their meaning is because the courts have failed to define the words precisely. Whatever the reason, the Legislature has used a phrase that normally has only a negative meaning but has used the words in a positive sense. This places the court on an uncharted sea." Respondent is correct in saying that the phrase "public policy" is usually used in a negative way. See Webster's New International Dictionary (2nd Edit.), p. 2005, Law 1. In 72 C.J.S. p. 209, it is said that "The term 'public policy' is perhaps the most expansive and widely comprehensive phrase known to the law. It has been said that the doctrine of public policy originated in England in the early part of the Fifteenth Century, and that the principle of public policy owes its existence to the very sources from which the common law is supplied. The phrase is used in several senses, and it may mean the common law or general statutory law of the state, and it may mean the prevalent notions of justice and general fundamental conceptions of right and wrong, and it may mean both. It is a vague, indefinite, and nebulous term,

and the decisions under this branch of the law are in such confusion as to have provoked the remark by Burroughs, J., in Richardson v. Mellish, 2 Bing. 229, which is set out infra p 218 note 36. It is a term of broad significance, although the decisions of some courts have given it a limited legal meaning. It is a relative term, sometimes used in a very vague, loose, or inaccurate sense, and it must be interpreted in the light if the circumstances surrounding the particular transaction."

■ Respondent is further correct in saying that the legislature has used the phrase "public policy" in Sec. 112.010, supra, in a positive sense. We shall not attempt to define the phrase nor shall we extend its meaning. We do say that the phrase may be and has been used in a positive sense. Note that Art. IX, 1945 Constitution of Missouri, deals with Education, particularly the Public School System. Sec. 10 of that article says, in part, "It is hereby declared to be the policy of the state to promote the establishment and development of free public libraries * * *." The people of this state, by adopting that provision of the Constitution, declared it to be the public policy to promote free public libraries. The policy of the state means public policy and in that way the phrase may be used in a positive sense. We say without hesitation that it is the public policy of this state to promote the establishment of good schools. We are of the opinion that the legislature, in using the phrase "public policy," intended to use the phrase in a positive sense and intended that it should embrace many subjects including elections on questions of whether a school district may issue bonds to provide money to construct school buildings. In other words, electors, in voting on a school bond issue, in a way, vote whether or not the people of the district are in favor of a policy of building better schools. In that respect, it is analogous to the declaration in Art. IX, Sec. 10, of the 1945 Constitution, whereby the people of the state declared it to be the public policy to aid free public libraries. In this case, the voters of a school district were given the choice of passing on a very important question, not only of whether to tax themselves in the amount of nearly $3,000,000, but further whether the proposed construction of new school buildings was advisable or necessary. It is unthinkable that the legislature, in carrying out the constitutional provisions concerning absentee voting, intended to deprive a large number of electors of an opportunity to express their opinion on such issues. It seems to us that the legislature in conformity with the constitutional provisions extended the absentee ballot law so as to include elections held in public school districts wherein the question submitted is to be decided by a general vote held under the general election laws.

■ In the Auditor's brief, point III declares, "The Absentee Ballots Should Not Have Been Counted Because Relator Failed to Comply with Chapter 112, RSMo 1959, by Failing to Make Absentee Ballots Available to Voters As Required." The particular point made is that Sec. 112.030 requires officials charged with supplying ballots to furnish such ballots 30 days before any election to voters who may apply therefor. It is stated that special elections such as the one before us may be had on 15-day notice as provided in Sec. 165.040, supra. It is urged that the ballots cannot be furnished 30 days before an election which requires only 15 days' notice. We rule that such failure on the part of officials to comply with the requirement of the statute to furnish absentee ballots 30 days before an election does not void an election. This requirement is directory and not mandatory. If it were otherwise, an official could through a mere negligent act or by willful conduct void an election. Certainly, no one could successfully contend that an election otherwise regular could be set aside merely because an official failed to furnish absentee ballots 30 days before an election.

The rule that such requirement is directory only is in harmony with common sense and justice. It is likewise supported by

good authority. State ex inf. Attorney General ex rel. Lincoln v. Bird, 295 Mo. 344, 244 S.W. 938, loc. cit. 939(3); Nance v. Kearbey, supra, 158 S.W. 629, loc. cit. 631 (3). In the Opinion of the Justices case, 152 Me. 219, 130 A.2d 526, loc. cit. 529, it is well stated: "We distinguish between acts of the voter and acts of the election officials. The voter must comply with the statute insofar as his acts are concerned. Failure, for example, of the voter to take the prescribed oath invalidates his vote. Miller v. Hutchinson, 150 Me. 279, 110 A.2d 577." Missouri courts have followed that same rule as we shall presently note.

Respondent Auditor, in contending in his brief that the provision of the statute in question is mandatory, cited certain cases in support of his position which are not in point. To illustrate, we note the case of Elliott v. Hogan, 315 S.W.2d 840, loc. cit. 847, 848(3, 4), wherein an opinion by the St. Louis Court of Appeals, in speaking of the provision of the absentee voting law, stated that "Taking into account the purposes of the act, the nature of the safeguards provided, and the consequences which would result from non-compliance therewith, in our opinion the statutes are mandatory." We have no fault to find with that opinion. What was before the Court of Appeals in that case was the question of whether voters who had cast absentee ballots had complied with the provisions of the law to entitle them to cast such ballots. It was an election contest. The court found that a certain number of the ballots were void because the voters had not complied with the provisions of the absentee ballot law. Note what the court there said (315 S.W.2d loc. cit. 845): "* * * that none of the 16 who based their right to vote an absentee ballot on the ground of illness or physical disability attached a medical certificate attested by a licensed physician or a duly accredited practitioner of Christian Science; that one of the 16 failed to have subscribed thereon the initials of the city clerk, the issuing official; that none of the 16 was sent by the city clerk to the voter by registered mail nor delivered to the voter in person; and that none of the 16 was sent by the voter to the city clerk by registered mail nor delivered by the voter in person to the city clerk."

No contention is made in the case before us that anyone entitled to vote by absentee ballot was not given an opportunity to do so. Steel v. Meek, 312 Ky. 87, 226 S.W.2d 542, loc. cit. 543(1). The requirement of the statute, Sec. 112.030, that absentee ballots must be available 30 days before an election does not render nugatory the provisions of Sec. 112.010, supra, which we have held to be applicable to elections held in school districts. If in elections where only 15 days' notice is required the officials having the duty to furnish absentee ballots to electors do so in good faith as soon as circumstances permit, such action is a substantial compliance with the law. In 29 C.J.S. Elections § 210f., p. 304, the rule is stated to be that "There should be a substantial compliance with statutory regulations governing the transmission and delivery of absentee ballots, but a substantial compliance with the statute in such respects is sufficient, * * *." See also Steel v. Meek, supra, 226 S.W.2d loc. cit. 543(2), (3).

No legal reason having been advanced for refusal to register the bond in question, it follows that the application of relator for a writ of mandamus must be sustained and that our alternative writ requiring the State Auditor to register the bond should be and is hereby made peremptory.

It is so ordered.

All concur.