William NEW, Respondent,

v.

Donald CORROUGH, Appellant.

No. 49404.

Supreme Court of Missouri,

Division No. 2.

Sept. 9, 1963.

**324**

Robison & Miller, Maysville, for appellant.

Gene Thompson, Maryville, for respondent.

STORCKMAN, Presiding Judge.

This is an election contest involving the office of director of the Maryville R–II School District. There were four candidates for two vacancies on the six-man board of directors. The original notice of election contest was filed by William New and Raymond Younger against Harold Fields and Donald Corrough. The contestees Fields and Corrough were declared elected as the result of the regular canvass of the ballots cast at the election and were sworn in as members of the board of direc-

tors. The contest was dismissed as to contestee Fields prior to trial. Pursuant to a stipulation filed by the remaining parties which defined and simplified the issues, the trial court rendered an interlocutory decree making certain findings and ordering a recount of certain designated ballots. The disputed ballots were recounted and the trial court entered its final decree finding that Harold Fields and William New had received the highest number of votes cast and were lawfully elected to the two offices of school director at issue in the election. The decree further ordered the contestee Donald Corrough to relinquish and surrender to the contestant William New his office of school director. The contestee Corrough filed a motion for a new trial and for judgment notwithstanding the judgment which motion was overruled and he has appealed. Hence the only parties in this court are the appellant Donald Corrough, a contestee, and the respondent William New, a contestant.

■ The supreme court has exclusive jurisdiction of an appeal from a final judgment in an action to contest the election of a school director because such action involves title to an "office under this state" within the meaning of the constitution. Art. V, § 3, Constitution of Missouri 1945, V.A.M.S. Bernhardt v. Long, 357 Mo. 427, 209 S.W.2d 112, 113 [1]; State ex rel. Worsham v. Ellis, 329 Mo. 124, 44 S.W.2d 129 [1].

The issues and facts were largely determined by the stipulation of the parties which provided, inter alia, that they submitted the case to the court on the agreed facts. At the time the contest was filed, the official count was: Fields, 1111 votes; Corrough, 1048; New, 1045; and Younger, 1042 votes. The contest largely revolves around 37 uncounted and uncanvassed absentee ballots, 4 absentee ballots which had been counted and included in the official count, and 9 ballots cast at the polls by students of Northwest Missouri State College.

The stipulation provided that for the convenience of the court the statement had

been divided into two sections—"the first dealing with the issues pertaining to the absentee ballots, the second dealing with the issue pertaining to the right of certain college students to vote in local school elections."

The disputed ballots may be divided into four groups as follows:

Group 1: Twenty-four uncounted absentee ballots submitted under paragraph V of the stipulation which provides: "It is stipulated that the only issue raised by the pleadings or submitted to the Court as to the validity or counting of these ballots is whether the failure of said Notary Publics to show expiration date of their commissions on their certificates on said affidavits on said envelopes invalidated the affidavit and-or the ballot enclosed therein."

Group 2: Thirteen uncounted absentee ballots submitted under paragraph VI of the stipulation which provides: "that the only issues raised or submitted to the Court as to the validity and counting of these ballots are (1) the failure of said Notary (Lloyd Hanna) to show the expiration date of his Commission on the face of the affidavits which failure is admitted and (2) the additional question raised by Contestee in Paragraph 7 of his Statement for Recount that said Notary was paid an unreasonable sum to take the acknowledgments in violation of provisions pertaining thereto, which issue is submitted to the Court under agreed statement of facts set out in Appendix C attached hereto and by reference made a part hereof." Appendix C is a sworn statement by Lloyd Hanna, the notary, which says in substance that he went to Maryville on the morning of election day where he certified and took acknowledgments for absentee ballots; that he made no charge to the voters but was paid $5 by another person apparently interested in the election; that the $5 payment was calculated to reimburse him for the time that he had lost from other work while taking acknowledgments.

Group 3: Four absentee ballots canvassed and included in the official count by persons who resided at Nodaway Rest Home which was privately operated by a lessee of the property which was owned by Nodaway County. The inmates received Old Age Assistance and endorsed their monthly checks of $65 to the Rest Home. The County paid to the operator an additional $5 per month for certain patients including the four in this group. The County made similar payments to operators of other nursing homes in Nodaway County. One of this group of voters, Ben F. Linville, was also challenged on the ground that he had been adjudged insane by the Nodaway County Court in 1933. He had been confined to a mental institution but was later released. While there had been no adjudication of restoration to sanity, no guardian of his estate or person had ever been appointed.

Group 4: Nine votes cast by college students covered by Section II of the stipulation which recited that the legality of the residence of these students for voting purposes and the validity of their ballots were challenged and the issue submitted to the court on the depositional testimony of the students concerning their respective residences.

The trial court held that the absentee ballots should be counted, that the nine student votes should be excluded, and that the votes of Mr. Linville and the other three patients of the Nodaway Nursing Home were valid. As a result of the recount, the court found that the votes cast for each of the candidates were as follows: Harold Fields, 1106 votes; William New, 1078; Raymond Younger, 1074; and Donald Corrough, 1040 votes. Fields and New were declared to be the successful candidates.

■ The first question presented is whether the constitution and laws of this state authorize voting by absentee ballot in a regular election for directors of a reorganized school district. This court en banc recently held that the word "district" as used in § 112.010, RSMo 1959, V.A.M.S., made the absentee voting laws applicable to elections held in school districts. State ex

rel. School Dist. of City of Jefferson, Cole County v. Holman, Mo., 349 S.W.2d 945, 947 [3]. See also State ex rel. Hand v. Bilyeu, Mo., 351 S.W.2d 457. The election involved in State ex rel. v. Holman was one to determine whether a debt should be incurred for the construction of school buildings as authorized by § 165.040, RSMo 1959, V.A. M.S. The opinion also holds that such an election involved the submission of "questions of public policy" as that term was used in § 112.010. An election involving "questions of public policy" is an alternative occasion for the use of absentee ballots with which we need not be concerned in the present case. Contrary to the appellant's contention, the absentee voting laws should be liberally construed in determining the elections to which the act applies. State ex rel. School Dist. of City of Jefferson, Cole County v. Holman, Mo., 349 S.W.2d 945, 947 [2].

■ The election in this case was the regular annual election of directors of the Maryville R–II School District conducted pursuant to § 165.330, RSMo 1959, V.A. M.S., which provides for a vote by ballot and that the election shall otherwise be "conducted in the same manner as the elections for state and county officers". Section 112.010 expressly provides for the casting of absentee ballots at elections for state and county offices. It follows from this and the holding in State ex rel. v. Holman that the election of directors for reorganized school districts is clearly within the purview of the absentee voting laws of this state. The trial court did not err in holding that the voting of absentee ballots at the election in question was authorized.

The next issue is whether the omission of the expiration date of the notarial commission on the ballot envelopes invalidated the absentee ballots so as to justify their rejection by the election officials. The stipulation of the parties on this question states: "It is agreed that the certificates of the respective Notary Publics on each of said affidavits did not show the expiration date of the Commission of said Notary Publics but that said Notary Publics * * * were in fact legally appointed, bonded commissioned and their commissions fully recorded as provided by law at the time of taking the acknowledgments shown on said affidavits; that none of their commissions had expired but were in full force and effect at the time of taking the affidavits; that each of said Notary Publics was in fact duly authorized to administer the statutory oath on the affidavits on each of the envelopes in question." Section 112.050, RSMo 1959, V.A. M.S., provides that the absent voter shall make and subscribe to the affidavits provided for on the return envelope for the ballot "before any officer authorized by law to administer oaths". The authority is not limited to notaries public. Neither § 112.040, which sets out an affidavit in substantially the form required, nor § 112.050, which directs the manner of marking and returning the absentee ballot, contains any express or inferential requirement that the "officer authorized by law to administer oaths" shall add to the jurat the expiration date of his commission.

■ Section 486.040, RSMo 1959, V.A. M.S., applying only to notaries public, provides that every notary public among other things "shall designate in writing, in any certificate signed by him, the date of the expiration of his commission." It has been held, however, that the failure of the notary public to designate in the certificate the expiration date of his commission does not destroy the effectiveness of his certification. Kansas City & S. E. Ry. v. Kansas City & S. W. Ry. Co., 129 Mo. 62, 31 S.W. 451, 453; Baskowitz v. Guthrie Mfg. Co., 99 Mo.App. 304, 73 S.W. 227, 228; Brown Mfg. Co. v. Gilpin, 120 Mo.App. 130, 96 S. W. 669[3]; State ex rel. Savings Trust Co. v. Hallen, 165 Mo.App. 422, 146 S.W. 1171, 1177. See also Hatcher v. Hall, Mo.App., 292 S.W.2d 619, 622, footnote 2. Therefore, if § 486.040 were applicable (which we do not decide), the failure to give the expiration date would not invalidate the certification. The trial court did not err in holding

this category of ballots to have been properly cast and in ordering them to be counted.

■ The absentee voting law, § 112.050, RSMo 1959, further provides that: "No charge shall be made by any officer in this state for the acknowledgment of affidavits prescribed in this chapter." The notary public Lloyd Hanna was paid $5 by a Mrs. Howard Watson for his services in certifying absentee ballots. There was no charge to or payment made by any voter. It further appears from Mr. Hanna's sworn statement that there was no arrangement made to pay for his services before he went to Maryville and the charge made after the services were completed was intended primarily to reimburse him for the time he had lost from his work. The purpose of the statutory provision is to protect the voter against being charged a fee for the privilege of casting his ballot. The absentee voters had no control over, or responsibility for, the act of the notary in his accepting the $5 since it was done after the voting was completed and without their knowledge. The statute was not intended to invalidate an absentee ballot under these circumstances. The trial court correctly ruled that these absentee ballots should be counted.

■ Art. VIII, § 2, of the Constitution, V.A.M.S. provides that "no person while kept in any poor house at public expense * * * shall be entitled to vote". The attack upon the validity of the absentee ballots cast by the four inmates of the Nodaway Home would require a finding that the home was a county poor house and that the payment of $5 a month toward their upkeep from the welfare funds of the County would amount to their being kept at public expense. This privately-operated nursing home cannot be classed as a county poor house in these circumstances. The County had no priority in the admission of patients and it made similar payments from its welfare funds to other privately-operated nursing homes. Furthermore, a person who is "an inmate of a public institution" is not eligible for Old Age Assistance under § 208.-010, subd. 2(5), RSMo 1959, V.A.M.S. The trial court did not err in approving the right of these four patients to vote in the election.

■ The additional challenge against the absentee ballot of Ben Linville is that he had been declared insane by the County Court of Nodaway County and committed to a mental hospital in 1933 and had .not been adjudicated of sound mind. Prior to November 4, 1958, the 1945 Constitution, Art. VIII, § 2, provided that "no insane person" shall be permitted to vote. On the date mentioned, the constitution was amended so that this kind of disqualification now applies only to à person "who has a guardian of his or her estate or person". It is conceded that Mr. Linville did not have a guardian of his person or estate at the time he cast his vote. Obviously the purpose of the amendment was to give polling officials something tangible on which to decide whether a person was disqualified by reason of his mental condition. The trial court did not err in holding that Mr. Linville was not disqualified.

■ Art. VIII, § 6, of the Constitution provides that: "For the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence * * * while a student of any institution of learning". The statements of the students to the effect that they "intended" to reside in the Maryville school district cannot prevail over admitted facts indicating a residence elsewhere. See Chomeau v. Roth, 230 Mo.App. 709, 72 S.W.2d 997, and Goben v. Murrell, 195 Mo.App. 104, 190 S.W. 986, 197 S.W. 432. We agree with the trial court that the evidence was insufficient to establish a voting residence.

As we have previously stated, the issues and the material facts were largely determined by the stipulation agreed to by the parties and filed in the case. The parties are to be commended by the simplification of the issues in this manner. The parties and their counsel were present at the recount

of the ballots and made objections which were recorded by the court reporter. An opportunity for a further hearing was provided prior to the final decree. The parties were afforded an opportunity to be heard on all the issues and the case was fairly tried.

We have examined all questions presented by the appellant and find them to be without merit. Accordingly the judgment is affirmed.

*All of the Judges concur.*