In the Matter of the Contest of John Albert RODRIGUEZ of the Election of Mary Roberson to the Office of School Director of District One for a four-year term and John E. Kelley, Chairman, Robert W. Wallerstedt, Secretary, Samuel Epstein and William F. Dancy, members, Commissioners for the Board of Election Commissioners for the City of Kansas City.

No. KCD 28920.

Missouri Court of Appeals,
Kansas City District.

Oct. 12, 1977.

Motion for Rehearing and/or Transfer Denied Oct. 31, 1977.

Application to Transfer Denied
Dec. 19, 1977.

Douglas J. Patterson, Kansas City, for appellant.

Ronald J. Stites, Koenigsdorf, Kaplan, Kraft, Fox and Kusnetzky, Kansas City, for respondent.

Before TURNAGE, P. J., and WASSER-STROM and SOMERVILLE, JJ.

TURNAGE, Presiding Judge.

This case involves a contest in the election of a director of the Kansas City School District. At the election held on January 20, 1976, Mary Roberson was certified to be the winner by a vote of 1021 to 878 for John Albert Rodriguez. Rodriguez filed a notice of contest.

The circuit court found in favor of Rodriguez and ordered Roberson to vacate the office she had assumed and ordered Rodriguez installed therein. Roberson appeals.

On this appeal Roberson contends the evidence did not show any violation of the absentee voting laws. Reversed.

Subsequent to filing his notice of contest, Rodriguez took the depositions of Vivian Heide, Lydia Miller, Margaret Rasmussen and William C. Redpath. Rodriguez then filed a motion for summary judgment. Roberson also filed a motion for summary judgment.

Both parties agreed the depositions, together with the information supplied by the election commission pursuant to § 124.310, RSMo 1969,* could be considered by the court. The election commission supplied information which gave the date the application for absentee ballot was received, the date the ballot was mailed, the date the voter received the ballot, the date the ballot was notarized, the name of the notary, the name of the person for whom the ballot was voted and the date the ballot was received by the election board.

Rodriguez contended in the trial court and renews such contention here, that he was entitled to summary judgment because violations of the absentee voting laws voided the ballots of 155 absentee voters. Rodriguez contends such violations consisted of the following:

I. The time and manner, mandatorily preserved by R.S.Mo. 112.020 of applying for absentee ballots has been flagrantly violated.

II. The making and subscribing to the affidavits provided and the transmission of the ballots, once sealed and marked, clearly violated R.S.Mo. 112.050.

* All statutory references are to RSMo 1969, unless otherwise noted.

III. The notarial oath, provided in R.S.Mo. 112.040 providing that the notary in the presence of whom the ballot was marked did not solicit or advise the voter, was grossly violated.

■ The three grounds urged upon the trial court, and repeated here, were not contained in the notice of election contest Rodriguez filed pursuant to § 124.250. However, it was held in *Nash v. Craig,* 134 Mo. 347, 35 S.W. 1001 (1896) that a notice of election contest can be amended in the same way as other pleadings. It was held in *Scott v. Thornton,* 484 S.W.2d 312, 314 (Mo. 1972) that on a motion for summary judgment the court could consider the broad scope of probable evidence which would authorize an amendment to the pleadings to conform to the evidence as revealed by the depositions and admissions on file. Since Rodriguez is entitled to amend his notice of election contest, in considering his motion for summary judgment the grounds which he urges here may be considered because they are based on evidence before the court through the depositions and information from the election board and would authorize an amendment to the pleadings to conform to the proof if the case were actually tried.

The court found the 155 ballots cast for Roberson and identified by Rodriguez were illegally cast and void. The court then found the vote to be 877 for Rodriguez, 866 votes for Roberson, and 871 votes for a third candidate. Roberson, of course, argues the 155 votes are legal and valid and should be counted as cast for her.

In 1969 the Legislature passed a new chapter on absentee voting. This chapter contains a comprehensive procedure for the application and the actual casting of absentee ballots.

■ Rodriguez fleshes out his first contention that the 155 ballots are void on the basis the application in each case for an absentee ballot was actually signed by the voter more than thirty days before the date of the election. The evidence showed Redpath and others took applications for absen-

tee ballots to the Defender Townhouse and had them signed as early as October, prior to the election here in question which was held in January, 1976.

Section 112.020 provides any person qualified to vote an absentee ballot "may apply in person or by mail for an official ballot for the election district or precinct in which he resides. The application shall be made to the election authority within thirty days prior to election day. . . . The application made by mail shall be received not later than four p. m. on the fourth day before the election."

Section 112.030 provides an application for an absentee ballot may be made on a blank furnished by the election authority and signed by the applicant or may be made in writing signed by the applicant, and sent by first class mail to the election authority. Upon receipt of each application within the time specified, the election authority is required to make a list of the names of the absentee voters whose applications have been received, and to post such list in a conspicuous place. The election authority is then required to mail an official ballot addressed to the absentee voter by certified mail with return receipt, or the election authority may cause the absentee ballot to be delivered in person.

From the above sections it is clear there is no provision which governs the date on which the application may or must be signed. The only requirement is that the application be made by mail or in person. The further requirement is that such application shall be made to the election authority within thirty days prior to the election, and, if made by mail, shall be received not later than 4:00 p. m. on the fourth day before the election. The application is not required to be dated nor is any affirmation required of the voter at the time the application is signed.

In *Queenan v. Russell,* 339 S.W.2d 475, 478[5] (Ky.1960) the court considered a statute which provided the applicant shall "make an application in writing and by mail * * * for an absent voter's ballot." The

court stated, "The application must be considered as having been made when properly mailed . . . ." The court in that case concluded the date of receipt was immaterial. The important holding, as applied to the case under consideration, is the fact the application was considered to have been "made" at the time it was mailed. There is little difference between the Kentucky statute and the Missouri statutes so far as the wording concerning the making of the application and the provision that such may be done by mail.

Absent any provision in the statute governing the date on which the application may or must be signed by the applicant, this court holds the application is actually made when such application is mailed to the election authority or delivered in person.

█ Rodriguez does not contend the statute dictates a time at which the application must be signed, but argues the door is somehow open to an abuse of the absentee voting law by allowing persons to have applications in their possession, signed by others, and in their discretion mail such applications within the time allowed by law. It should be noted there was no evidence produced in this case which showed any application was mailed without the authority of the person signing the application, nor is there any allegation or proof that any signatures on any applications were not actually made by the person making the application. Nor is there any allegation or proof that the signers were unaware that the applications were for absentee ballots for the January election. On all these points, the only evidence offered by either party was the affidavit of 176 voters in which each swore he was aware the application he signed was for an absentee ballot for the School Board election of January 20, 1976, that when he signed he truthfully expected not to be able to go to the polls on January 20, 1976, that on said date he was disabled to go to the polls, and that he had authorized the worker to act for him in connection with the absentee ballot. Rodriguez did not challenge the contents of those affidavits and contented himself with the

position that the mere fact of signing the application more than thirty days before the election is enough to invalidate the ballot so applied for. In short, there is no allegation or proof of any wrongdoing.

Rodriguez, in this point, as in other points, simply argues from speculation that harm could result from applications being procured by persons more than thirty days in advance of an election. It is difficult to imagine how any wrongdoing could occur under the proof before the court in this case. All the voters involved were residents of the Defender Townhouse, and the inference is clear such Townhouse is a residence for elderly persons. Section 112.010 provides any person who expects to be prevented from personally going to the polls on election day is entitled to vote an absentee ballot. However, the application for the absentee ballot need not even contain that statement. The application need only request an absentee ballot. It is not until the ballot is actually voted that the voter is required to make an affidavit by § 112.040 that he expects to be prevented from going to the polls because of absence from the county, illness, religious beliefs, or physical disability.

Further, if an application is signed more than thirty days before the election and the person signing the application has changed his mind about voting by absentee, he is not required to vote the absentee ballot when received by him. He is free at that time to ignore the ballot if he so desires. In short, the application performs only the function of causing an absentee ballot to be mailed to the voter. The application performs no function so far as the actual casting of a ballot is concerned. Thus, in this preliminary stage, the signing of an application more than thirty days in advance of the election, when such is not prohibited by law, did not and should not deprive that person of his right to vote by absentee ballot.

It is well to bear in mind the following statement quoted in *State v. Holman,* 349 S.W.2d 945, 947[2] (Mo. banc 1961):

Note what was said in *Nance v. Kearbey,* 251 Mo. 374, 158 S.W. 629, loc. cit. 631(2):

"Election laws must be liberally construed in aid of the right of suffrage." This statement was quoted with approval by this court en banc in the case of *Application of Lawrence*, 353 Mo. 1028, 185 S.W.2d 818, loc. cit. 820. In the *Nance* case, supra, the court further stated that "The uppermost question in applying statutory regulation to determine the legality of votes cast and counted is whether or not the statute itself makes a specified irregularity fatal. If so, courts enforce it to the letter. If not, courts will not be astute to make it fatal by judicial construction."

For these reasons it is concluded the signing of the application more than thirty days in advance of the election did not void the ballot subsequently cast by such applicant.

■ Under the second ground Rodriguez argues the affidavit described in § 112.040 was signed by the absentee voters but the blanks in the affidavit were actually filled in by Redpath or one of the other persons who notarized the ballots and that such ballots were then retained by the notary and mailed to the election authority from three to sixteen days later. Again, Rodriguez does not allege any actual wrongdoing in the marking or handling of the 155 absentee ballots. He only argues from speculation that wrongoing *could* have occurred. The court expressly found no fraud had been shown in the case.

Section 112.050 required the absentee voter to make and subscribe to the affidavit printed on the return envelope before any officer authorized by law to administer oaths. The affidavit contains blanks in which the name of the voter is to be inserted, his residence address and the precinct in which he lives and other similar formal information. At the end of this affidavit is a blank line under which the statute states "signature of voter." Rodriguez states the blanks were filled in by the notary public but concedes the voter actually signed his name on the blank which required the signature of the voter. No reason is advanced and none is perceived as to why the filling in of the formal blanks to state the voter's name, address and voting precinct should

invalidate the ballot. The statute does not require these blanks to be actually filled in by the voter. The voter performed the only duty required of him by statute when he signed at the place required.

The further objection that the notary retained the ballot from the time it was signed and sealed by the voter for several days is likewise not controlled by law. Section 112.050 provides the envelope containing the absentee ballot shall be sent by mail or delivered in person by the voter to the election authority. To be counted the ballots here involved had to be received by the election authority not later than 4:00 p. m. on the day before the election. There is no contention any ballots contested in this case were received after the statutory deadline.

As in his first point, Rodriguez argues again that although no fraud or actual wrongdoing was proven, there was opportunity for such to occur. No authority is cited and none has been found which would authorize the invalidation of an absentee ballot on the basis of speculation. Apparently Rodriguez would invalidate these ballots on the premise the notary could have opened the envelope containing the absentee ballot and could have changed the marking on the ballot before he mailed it to the election authority. However, this is entirely speculation and no proof whatever was introduced to show that any ballot was tampered with in any fashion or that any actual wrongdoing whatever occurred. Not only is there an absence of any proof of wrongdoing, but it should be remembered the court expressly found no evidence of fraud or wrongdoing. In this circumstance, this court certainly may not void otherwise valid ballots simply for the reason that the procedure followed here would afford opportunity for the perpetration of fraud in the future. No violation of the statutory method of absentee voting has been shown to have occurred in this case on the ground here considered.

■ While Rodriguez does not directly contend the absentee voter is required to personally deposit his ballot in the mail, this court has nonetheless considered this argument. Section 112.050 does not require the

voter to personally deposit his ballot in the mail. This question was considered in *Sommerfeld v. Board of Canvassers*, 269 Wis. 299, 69 N.W.2d 235, 238[3, 4] (1955) when the court stated:

> If our statute is construed to mean that the voter shall himself mail the ballot or personally deliver it to the clerk, then the statute would defeat itself in the case of those who are sick or physically disabled. They would be unable to mail ballots except through an agent. Having made provision that these unfortunate people can vote, we cannot believe that the legislature meant to disenfranchise them by providing a condition that they could not possibly perform.

No statutory violation is demonstrated by the second argument advanced by Rodriguez to invalidate the 155 absentee ballots.

For his last argument, Rodriguez urges the persons who notarized the affidavit on the absentee ballot envelopes violated the certificate contained therein which was signed by the notary. The certificate required of the notary provides the affidavit was subscribed and sworn to before him and the affiant has exhibited the ballot to him unmarked and that such ballot was marked without the notary seeing or having knowledge of how it was marked, "and that the affiant was not solicited or advised by me to vote for or against any candidate or proposition. . . ." Rodriguez argues that Redpath was the notary involved in most of the 155 ballots and at some time prior to the time the absentee voters received their ballots from the election authority, Redpath had caused a letter to be distributed in the Defender Townhouse in which he made it known he was supporting Roberson in the School Board race. Rodriguez argues this constituted a violation by Redpath of the certificate he signed as a notary public. Rodriguez concedes the evidence does not show that any notary public solicited or advised any persons during the time the notary public was present with the person while they were marking their ballot and signing the affidavit. The only evidence Rodriguez relies upon is the letter which was sent at some time prior to the date the absentee ballots were received.

It is apparent the certificate signed by the notary applies only to the time during which the notary was with the absentee voter in his official capacity while the voter marked his absentee ballot. The prohibition against the solicitation of a voter applies to the notary public only while he is acting in his official capacity as an officer authorized to administer oaths. This is borne out by the designation under the line for his signature of "official capacity." There is no prohibition as to the activities of the notary public while he is acting in a personal capacity at some time prior to the time he attends the absentee voters in his official capacity. This was not a situation in which the solicitation for the vote in a personal capacity and the attendance by the notary in an official capacity was so closely connected as to cause doubt as to the capacity of the notary at a given time. The letter stating Redpath's views was received well in advance of the time the absentee ballots were marked and Rodriguez makes it clear he is not contending the proof shows any solicitation or advice to the voter at any time during the marking of the ballot or closely connected therewith. There is nothing shown under this point which would invalidate the 155 ballots.

Rodriguez tacitly concedes there may not be any violation sufficient to invalidate the 155 ballots under any one of his three grounds, but argues the cumulative effect of these grounds would cause their invalidation. It is difficult to perceive how the cumulative effect of these grounds could be any greater than each one standing alone. If none of the grounds standing alone would invalidate the ballots, then all standing together would not accomplish any greater result.

Rodriguez further argues isolated incidents with reference to other ballots and other violations allegedly committed by Redpath and other notaries. Obviously other incidents involving other ballots could have no effect on the ballots in question here.

The parties have argued at length whether the absentee ballot law is directory or

mandatory. There is no necessity to consider such argument because the grounds alleged here to invalidate certain ballots do not involve the observance or violation of statutory provisions. Here the practices relied upon are not controlled by statute.

There is no indication Rodriguez has any additional evidence to present. The evidence presented does not show any grounds upon which the 155 ballots could be invalidated. For that reason the judgment is not supported by substantial evidence and cannot stand. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

The judgment is reversed and the cause is remanded with directions to the court to enter judgment in favor of Roberson. The court is further directed to immediately order John Albert Rodriguez to give up the office of Director of the Kansas City School District and to deliver all books, papers, property and effects pertaining thereto to Mary Roberson. The court shall further direct the Kansas City School District to immediately install Mary Roberson as the duly elected member of that body from Sub-District One. Costs are assessed against Rodriguez.

All concur.

