**STATE of Missouri, Respondent,**

v.

**Bill REDPATH, Appellant.**

**No. WD 34035.**

Missouri Court of Appeals, Western District.

Jan. 31, 1984.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied March 27, 1984.

Application to Transfer Denied May 15, 1984.

Robert G. Duncan, Kansas City, for appellant.

John Ashcroft, Atty. Gen., George Cox, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, C.J., and DIXON and CLARK, JJ.

TURNAGE, Chief Judge.

Bill Redpath was found guilty by a jury of knowingly delivering a fraudulent absentee ballot application. Section 115.279.4 RSMo 1978.[1] Pursuant to the jury's recommendation the court fixed punishment as a fine of $5,500. On this appeal, Redpath contends the indictment did not set forth the essential elements of the crime, the evidence was insufficient to support the jury's verdict, and the state's main instruction was erroneous. Reversed and remanded.

Redpath was charged by indictment with four counts of knowingly making, delivering, or mailing a fraudulent absentee ballot application. The jury found him not guilty on three counts, but found him guilty on the count relating to the absentee ballot application of Alice Broderick.

In March of 1981, Redpath was campaigning for a mayoral candidate in the Raytown City election. As part of his campaign activity, Redpath called a number of

---

1. All sectional references are to Missouri's Revised Statutes, 1978.

people to determine whether or not they desired to vote by absentee ballot. One of those Redpath contacted was Alice Broderick, a woman who was 71 years of age and a resident of Temple Heights Manor, a home for the elderly. Mrs. Broderick testified that Redpath called her on the phone and then brought to her apartment a slip of paper which he requested that she sign. She identified an application for an absentee ballot as the paper which Redpath presented and which she signed. Mrs. Broderick did not think any of the form was filled out when she signed. However, the form mailed to the election board by Redpath had all of the blanks filled in including her name and address. Section 115.279 does not require an absentee ballot application to be notarized, nor does it require that the voter do more than request an absentee ballot in writing, stating the applicant's name, address, and reason for voting an absentee ballot. The application signed by Mrs. Broderick contained her name and address. Above the signature line appeared a large box within which were five printed statements with a small box in which a check mark could be made to the left of each statement. One of the statements read "illness or physical disability" and Mrs. Broderick's application had a check mark in the box opposite that statement.

Mrs. Broderick testified that at no time did she tell Redpath that she expected to be ill on election day, nor did he ever ask her if she expected to be ill or out-of-town. Mrs. Broderick further stated that some time after she signed the application, an absentee ballot was delivered in the mail to her. She stated that shortly after she received the absentee ballot Redpath again called and then visited her apartment. Mrs. Broderick, at that time, voted the absentee ballot. There was no evidence as to the state of Mrs. Broderick's health on election day, April 7, 1981.

Redpath testified that he called Mrs. Broderick on March 6, 1981, and she told him she wanted to vote in her apartment. He then took the absentee ballot application to her apartment. Redpath claimed he completed the application before she signed it.

Section 115.279.4 provides that "any person who knowingly makes, delivers, or mails a fraudulent absentee ballot application shall be guilty of a class I election offense." The indictment simply repeated this statutory language.

Redpath first contends that the indictment is faulty because it charged him with committing an act which was not an offense under the language of § 115.279. The indictment charged Redpath with knowingly making, delivering, or mailing a fraudulent absentee ballot application by falsely stating that Alice Broderick was unable to go to the polls to vote because of illness or physical disability. Redpath agrees that under the statute which he is charged with violating, § 115.279, the voter is required to state his reason for voting absentee. He claims, however, that under § 115.277 valid reasons for voting an absentee ballot include that the voter *expects* to be unable to go to the polls because of illness. Thus, he contends that since the indictment failed to refer to the voter's expectation, it did not charge the offense in the language of the statute.

▮▮▮ Redpath is correct in his contention that the indictment is faulty. The test of the sufficiency of an indictment is whether it contains all the essential elements of the offense as set out in the statute, and clearly apprises the defendant of the facts constituting the offense in order to enable him to meet the charge and to bar further prosecution. *State v. Strickland,* 609 S.W.2d 392, 395[7, 8] (Mo. banc 1980). The indictment in the present case failed to correctly apprise Redpath of the facts constituting the offense and thereby made it difficult, if not impossible, for Redpath to prepare his defense without second guessing the state's approach. Since the indictment merely imperfectly charged Redpath, however, the trial court did acquire jurisdiction. *State v. Newhart,* 503 S.W.2d 62, 67[6] (Mo.App.1973].

Redpath also contends that the court improperly instructed the jury. The instruc-

tion required for conviction that the jury find: (1) that Redpath knowingly *made* an absentee ballot application for Alice Broderick; (2) that Broderick did not indicate to Redpath that she expected to be prevented from going to the polls due to illness or disability; (3) that Redpath indicated on the application that Broderick expected to be prevented from going to the polls; and (4) that Redpath knew that the information concerning Broderick's being prevented from going to the polls was false. The instruction concluded that if the jury found those facts it would find Redpath guilty of *delivering* a fraudulent application for an absentee ballot.

The court erred in giving the instruction set out above since it garbled the elements of the offense charged. The jury was instructed that if it found, among other facts, that Redpath had "knowingly *made*" an application for Broderick, it would find him guilty of *delivering* a fraudulent application. This does not necessarily follow since Redpath could have made the application but not delivered it.[2]

The state contends that Redpath did, in fact, "make" a fraudulent ballot application by mailing Mrs. Broderick's application after checking boxes without her authority. In support of this claim the state cites *Matter of Rodriguez*, 558 S.W.2d 356, 360[4] (Mo.App.1977), in which this court held that an application for absentee ballot is made at the time it is mailed. The state reasons that since Redpath admittedly mailed, or in a sense "delivered," Broderick's application, he simultaneously "made" the application. This logic is faulty because *Rodriguez* addressed the question of the time at which an application was made, not the question of the identity of the person who made the application. *Rodriguez* is, in this respect, irrelevant to the issue presently before this court.

More troublesome than the state's misreading of *Rodriguez*, however, is the failure of the instruction to observe the discrete alternative elements of the offense with which Redpath was charged. If the state intended to submit the charge that Redpath delivered a fraudulent application, the instruction should have submitted facts from which the jury could find that Redpath delivered an application which he knew to be fraudulent. The instruction improperly suggested that the legislature intended to ascribe identical meanings to "made" and "delivered," and that the terms are, therefore, interchangeable. The basic rule of statutory construction here applicable is that the court is "to seek the intention of the lawmakers and to do so from the words used, if possible; ascribing to the language used its plain and rational meaning *and giving significance and effect to every word*, phrase, sentence and part thereof, if in keeping with that intent." (emphasis added) *State v. Ralston Purina Company*, 358 S.W.2d 772, 777[1] (Mo. banc 1962). The intent of the legislature with respect to § 115.279, to preserve the integrity of the voting process, is in no way compromised by according plainly different meanings to "made" and "delivered." On remand these words should be used consistently as though they are discrete, not synonymous, terms. For these reasons the instruction erroneously allowed the jury to find that Redpath delivered the application merely from a finding that he made it. The instruction needed to submit facts from which the jury could find delivery.

The meaning of "fraudulent" will become important on remand and so the following brief discussion is warranted. In *State v. Harris*, 313 S.W.2d 664, 670 (Mo. 1958), the court quoted Webster's New International Dictionary which defined "fraudulent" as "1. Using fraud; tricky; deceitful. 2. Characterized by, founded on, or proceeding from, fraud; of the nature of fraud. 3. Obtained or performed by artifice." To find that Redpath acted fraudulently in violation of § 115.279 it is

---

2. By this statement this court does not hold that the evidence is sufficient to show that Redpath did make the application. The question of whether or not Redpath made the application was not briefed or argued, and is not decided in this opinion.

not enough for the jury to find that he checked the illness or disability box on Broderick's application. The statute does not require the applicant to actually fill out the application. *Rodriguez*, 558 S.W.2d at 360[4]. It only requires that the applicant, or a person authorized in the statute, sign the application. Thus, a violation of § 115.-279 would be possible only if the jury found that Redpath knowingly made, mailed, or delivered an application in which he had checked the box without Broderick's knowledge, authority, or ratification. While it appears that the state's evidence would support a finding of fraudulent action, on remand the court should carefully frame the issues for the jury.

 It should be noted, as well, that neither § 115.277 nor § 115.279 includes an objective standard by which the truthfulness of a voter's expectation to be ill or disabled may be measured. The statutes do not require the voter to entertain a good faith expectation, but simply allow the voter to state that he expects to be ill or disabled. Thus, it is immaterial whether Broderick was acting in good faith if she told Redpath that she expected to be ill. If the jury finds that she did, in fact, authorize him to check the box, or it is found that she ratified his act of checking the box, then the application could not be found fraudulent.

 Finally, Redpath contends that the court improperly admitted evidence of other crimes in connection with the execution of the absentee ballot. Since this matter may arise on retrial, the question will be addressed. A criminal defendant has the right to be tried only for the crime or crimes with which he is charged. *State v. Shaw*, 636 S.W.2d 667 (Mo. banc 1982). The admission of evidence of offenses unrelated to the cause on trial breaches that right because it may result in a conviction founded upon crimes of which the defendant is not accused. Thus, the general rule is that proof of the commission of separate and distinct crimes is inadmissible unless it has some legitimate tendency to establish that the defendant is guilty of the crime

with which he is charged. *Id.* at 672. *See also; State v. Harrold*, 38 Mo. 496, 497–98 (1866).

A few specific exceptions to the general rule have been widely recognized. Evidence is admissible to prove the crime charged when it tends to establish motive, intent, the absence of mistake or accident, or a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954). The *Reese* court added an important caveat, stating that "the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny."

Redpath contends that evidence concerning his participation in the voting of absentee ballots was irrelevant, prejudicial, and did not fall within one of the above exceptions. He claims that the court erred in admitting testimony by Broderick and other residents of the home that Redpath instructed voters to vote for certain candidates and to sign their affidavits in blank. Redpath also points to error in the court's receipt of testimony to the effect that he notarized ballots outside the presence of the voters. Each of these alleged acts would seem to be proscribed by the election laws.

 Applying the relevant rule to this case, that testimony which tends to prove Redpath checked the illness or disability box on the absentee ballot affidavit after Broderick signed the affidavit would be admissible. Such testimony is admissible as evidence of a common scheme or plan by Redpath to check boxes giving the voter's reason to vote absentee after the voter has signed the application or affidavit. However, testimony that Redpath instructed voters how to vote is irrelevant and prejudicial. It does not tend to establish a common scheme or plan since Redpath is charged with completing ballot applications himself without authority, not with instructing voters how to complete the applications. Also, the crime of notarizing

a voter's ballot outside the voter's presence is not so related to the crime charged that proof of one tends to establish the other.

▆▆▆ This court concludes that the evidence produced by the state was sufficient to support a finding by the jury that Redpath knowingly checked the illness or disability box without the knowledge, consent, or authorization of Broderick. However, since the indictment did not properly charge Redpath, and since the instruction did not properly frame the issues for the jury, the judgment must be reversed.

The judgment is reversed and this cause is remanded for further proceedings.

All concur.