STATE of Missouri,
Plaintiff-Respondent,

v.

Morise KING, et al.,
Defendants–Appellants.

Nos. 51953–51955.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 26, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 8, 1988.

Application to Transfer Denied
April 19, 1988.

Shaw, Howlett & Schwartz, James J. Knappenberger, Clayton, for defendants-appellants.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, George Westfall, Pros. Atty., Madeleine Birmingham, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

PUDLOWSKI, Judge.

This appeal stems from incidents related to an April 1985 election in the City of Pagedale. In that contest defendant Mary Hall ran for mayor; Claibourne King, relative of defendants Morise and Moses King, and Fred Smith ran for 2 of 3 available aldermanic positions. All three candidates ran on the same ticket. Hall and the defendants, the King brothers (Moses and Morise), were interested in seeing this slate of candidates get elected. In order to bolster their chances defendants sought advice on running a campaign and were urged to solicit absentee ballots. Hall obtained blank applications for absentee ballots from the Board of Election Commissioners and she and the Kings set out on a drive to register voters and recruit absentee voters. The plan included door-to-door and sidewalk solicitation of absentee voters. Several voters signed applications for absentee ballots without knowing the nature of what they were signing. Each application had boxes that were to be marked to indicate the reason the voter was requesting to vote by absentee ballot. Acceptable reasons are enumerated in Section 115.277 [1] and include anticipated absence, illness or disability on election day. Each application signed by the voters who testified at trial had one of the boxes marked but each of the voters denied making any such mark; nor did they indicate to anyone that they expected to be absent, ill or disabled on election day. When the voters received their ballots, the defendants would visit the voter at their home to instruct them on the use of the ballot. After noting tha a large number of applications indicated that ballots were to be mailed to the home of the candidate and not to the home of the voter, an employee at the Board of Election Commissioners contacted the prosecuting attorney's office. Subsequently, charges were brought against the defendants.

On March 19, 1986 the defendants were tried by jury in the Circuit Court of St. Louis County on several counts of election fraud. Morise and Moses King were convicted under Count IX of the indictment charging the unlawful assistance of voter Annie Allen in violation of Section 115.291, which makes such assistance a Class One election offense. Each of the King brothers were fined $2,500 in accordance with Section 115.631. Mary Hall was convicted under Counts III and IV of the indictment which charged her with knowingly making, delivering or mailing a fraudulent absentee ballot application in violation of Section 115.277 and Section 115.279(4), punishable under Section 115.631. Accordingly, for each count Hall was sentenced to 10 days in jail and fined $2,500. On appeal defendants raise numerous allegations of instructional and evidentiary error and pray for reversal of their convictions or, in the alternative, a new trial. We affirm.

■ On their first point on appeal, defendants argue that the trial court committed prejudicial error in submitting Instructions 11 and 14 to the jury. These instructions submit the offense of making a fraudulent absentee ballot in violation of Section 115.279 which provides in pertinent part:

. . . . .

2. Each application shall be made to the election authority of the jurisdiction in which the person is or would be registered. Each application shall be in writing and shall state the applicant's name, address at which he is or would be registered, his reason for voting an ab-

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S.

sentee ballot and the address to which the ballot is to be mailed, if mailing is requested. Each application to vote in a primary election shall also state which ballot the applicant wishes to receive. If any application fails to designate a ballot, the election authority shall, within three working days after receiving the application, notify the applicant by mail that it will be unable to deliver an absentee ballot until the applicant designates which ballot he wises to receive.

. . . . .

4. Each application for an absentee ballot shall be signed by the applicant or, if the application is made by a guardian or relative pursuant to the provisions of this section, the application shall be signed by the guardian or relative, who shall note on the application his relationship to the applicant. If an applicant, guardian or relative is blind, unable to read or write the English language or physically incapable of signing the application he shall sign by mark, witnesses by the signature of an election official or person of his own choosing. Any person who knowingly makes, delivers or mails a fraudulent absentee ballot application shall be guilty of a class one election offense.

Instructions 11 and 14 submit the same offense but refer to applications made on behalf of two different voters. The instructions are virtually identical and read as follows:

A person is responsible for her own conduct and she is also responsible for the conduct of other persons in committing an offense if she acts with them with the common purpose of committing that offense, or if, for the purpose of committing that offense, she aids or encourages the other persons in committing it.

As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about March 22, 1985, in the County of St. Louis, State of Missouri, defendants, or any of them, made an absentee ballot application in the name of [Annie Mae Allen or Addie Parker] and,

Second, the absentee ballot application was false in that the application stated that [Annie Mae Allen or Addie Parker] expected to be absent from St. Louis County on April 2, 1985, when in fact on or about March 22, 1985 [Annie Mae Allen or Addie Parker] did not expect to be absent from St. Louis County on April 2, 1985, and

Third, the representation on the absentee ballot application that [Annie Mae Allen or Addie Parker] expected to be absent from St. Louis County on April 2, 1985, was made without the knowledge, authority and ratification of [Annie Mae Allen or Addie Parker], and

Fourth, the conduct submitted in the above paragraphs was done knowingly,

then you are instructed that the offense of making a fraudulent absentee ballot application has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of the offense of making a fraudulent absentee ballot application, the defendant Mary Hall acted alone or aided or encouraged the other defendants in committing that offense,

then you will find the defendant Mary Hall guilty under Count IV of making a fraudulent absentee ballot application. . . .

Defendants contend that the instruction is erroneous because it fails to ascribe all the elements of the offense to the specific person alleged to have performed the acts and instead allows conviction upon the finding that "defendants or any of them" performed the prohibited acts. We disagree.

The Missouri law governing accomplice liability is set forth in RSMo Chapter 562. Section 562.036 provides:

A person with the required culpable mental state is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is criminally responsible, or both.

Section 562.041 states:

1. A person is criminally responsible for the conduct of another when....

(2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

It is well established that failure to conform to the pattern instructions that appear in the MAI or the applicable Notes on Use constitutes error. *State v. Hannett,* 713 S.W.2d 267, 272 (Mo.App.1986). There are no approved MAI–CR2d instructions for the offense of making a fraudulent absentee ballot application. Defendants were charged under a theory of complicity so a modified version of MAI–CR2d 2.12 was given. Notes on Use 6 examines certain factual variations that involve accomplice liability and provides guidelines for the drafting of instructions in such situations. Defendants submit that example 6(a) is applicable to this case. Section 6(a) states:

.... (a) Where the evidence shows the conduct of the offense was committed entirely by someone other than the defendant and the sole basis for defendant's liability is his aiding the other person or persons (as where the defendant is not even present but planned the offense, or where he is the lookout or driver of the getaway car in a robbery or burglary) then all the elements of the offense should be ascribed to the other person or persons and not to the defendant.

However, the evidence in this case does not show that the conduct of the offense was committed entirely by someone other than defendant Hall. Rather, the evidence shows that one or more of the three defendants committed the offensive acts, but there is no clear indication as to which person or persons committed such acts. In this situation Notes on Use 6(c) is applicable and provides:

(c) Where the evidence is not clear or conflicts as to which person (in a group including the defendant) engaged in the conduct constituting the offense (as where the defendant is charged with burglary and the evidence shows the defendant was one of two persons, one of whom unlawfully entered the building and stole while the other remained outside as a lookout) ascribe the elements of the offense to the defendant or the other person or persons.

Instructions 11 and 14 conformed to that pattern. Point denied.

In Points 1, 3 and 4 defendants make several challenges to the sufficiency of the evidence. They claim that prejudicial error was committed by the trial court in overruling defendants' motions for judgment of acquittal, and in submitting to the jury the verdict directors as to counts III, IV and IX in that the evidence is insufficient in the following ways:

1. The evidence does not support any finding of criminal wrongdoing with respect to voters Annie Allen and Addie Parker;

2. The evidence is insufficient to support the portions of Instructions 11 and 14 pertaining to aiding and abetting;

3. The evidence is insufficient to support the portion of Instructions 11 and 14 pertaining to the proposed finding that Mary Hall acted alone or aided or encouraged the other defendants;

4. There is no evidence of who filled out or marked each application or ballot envelope and mailed them;

5. The evidence shows that the voters authorized or ratified the applications and envelopes;

6. There is no evidence of which, or, if either or both of the King brothers assisted voter Annie Allen by suggesting which candidate to vote for;

7. The evidence shows that Annie Allen was entitled to assistance; and

8. There was no evidence that Hall was present or was acting with another when Parker or Allen's application was signed.

The rules of law that must guide our decision in this matter are well established. When the sufficiency of the evidence is challenged, a reviewing court must review

the evidence in the light most favorable to the verdict and all evidence and inferences to the contrary must be disregarded. *State v. Dixon*, 716 S.W.2d 815, 818 (Mo. App.1986); *State v. Brown*, 716 S.W.2d 6, 7 (Mo.App.1986). The credibility of the witnesses and the weight of their testimony are within the decisional domain of the jury and are not subject to review on appeal. *State v. Brown*, 665 S.W.2d 945, 958 (Mo. App.1984). The appellate court must determine only whether there was sufficient evidence from which reasonable persons could have found the defendant guilty as charged. *State v. Light*, 686 S.W.2d 538, 540 (Mo.App.1985); *State v. Norwood*, 721 S.W.2d 175, 178 (Mo.App.1986). Keeping these maxims in mind we now turn to evidence in the case before us. Since the chronological sequence of events is difficult to extract from the record and is of no particular significance in this case, we will examine the testimony of several witnesses.

■ The evidence revealed that a lawyer and political confidant advised Mary Hall, Moses King and Morise King regarding the practical aspects of running a campaign, in particular, the procurement and valuable use of absentee ballots. He urged Mary to hand-pick aldermanic candidates to maximize her political effectiveness as Mayor if she should win the election. He further suggested that Hall and the King brothers get the support of every registered voter they could including the illiterate and those who had no knowledge of the voting process.

Mary Hall testified that she had obtained absentee ballot applications from the Board of Election Commissioners.

Rebecca Pritchard was taken to register to vote at the local library by Hall and the King brothers. After she registered and while still in the parking lot of the library, Hall told her she would not have to go to the polls if she signed an application for an absentee ballot. Pritchard signed her name and filled out her address on the application. At trial it was shown that the application, as received by the Board of Election Commissioners, indicated by check mark that Pritchard expected to be absent from the county on election day. Pritchard denied making, ratifying or authorizing anyone to make such a mark; nor did she indicate to anyone that she expected to be absent. Days later Pritchard got the ballot in the mail and put it aside. Shortly thereafter Pritchard took the ballot to her neighbors home. The King brothers were there when she arrived and showed her how to use the ballot.

Annie Benjamin testified that she was walking on Pagedale Avenue when she was approached by Morise King who, along with Moses, had been sitting in a parked car. Morise asked Benjamin if she planned to vote on election day. After stating that she did, she was asked to sign a piece of paper. Benjamin signed the paper in the presence of Mary Hall but was not told what she was signing. At trial it was shown that the application, as received by the Board of Election Commissioners, indicated by check that she expected to be absent from the county on election day. Benjamin denied making, authorizing or ratifying such a mark; nor did she indicate that she expected to be absent. Further, the form indicated that the ballot was to be mailed to the home of Fred Smith, one of the candidates aligned with Hall in the election. Benjamin denied requesting that the ballot be mailed to that address. When she went to the polls to vote on election day she was turned away.

Marilyn Saulsberry was walking home from the store when she was approached by Hall. The King brothers and Fred Smith were in or near a car parked across the street. Hall told Saulsberry to sign the application if she couldn't go to the polls to vote. Saulsberry signed the application and wrote her address on the form. She denied making, ratifying or authorizing any other marks on the form. At trial it was shown that the application, as received by the Board of Election Commissioners, indicated by check mark that Saulsberry expected to be ill, incapacitated or disabled on election day. She did not indicate to anyone that she expected to be ill, incapacitated or disabled on election day. Sauls-

berry got the ballot in the mail and Hall came to her home shortly thereafter. In Saulsberry's own words "[Hall] asked me who I wanted to vote for, some of the people I wanted, and she said, no, and punched out the people she wanted to." Saulsberry signed the affidavit and Hall put the ballot in the envelope and left. During this entire transaction, the Kings were waiting in a car outside of Saulsberry's home.

Hall and the King brothers brought an application to the home of Pauline Lewis. Hall told her to sign it if she did not feel like walking to the polls to vote. Lewis signed the application but made no other marks on it. At trial it was shown that the application, as received by the Board of Election Commissioners, indicated that Lewis expected to be physically incapacitated, ill or disabled on election day. She did not authorize or ratify such a mark to be made; nor did she indicate to anyone that she expected to be ill on election day. Lewis received the ballot in the mail and put it aside. Later Hall and the Kings appeared at her home and told her how to use the ballot. One of the King brothers told her what numbers to punch and after she complied he took the ballot and put it in the envelope. Lewis signed her name and wrote her address on the affidavit. One of the King brothers took the envelope and the three left.

Annie Allen testified that she could read and write "a little bit" and had always gone to the polls to vote in the past. She and her aunt, Addie Parker, had been visited in the past by Hall and the Kings while campaigning. Although Allen did not recall how she got the application for an absentee ballot, she remembers that the King brothers were present in her home when she signed the form. Hall was not present at the time but her address appeared on the application. Allen did not know what she was signing. Days later, Annie got a brown envelope in the mail and threw it out believing it to be trash. Approximately ten minutes later the Kings came to her home. Morise told her to get the envelope out of the trash because it was a ballot. Moses showed her where to

punch and she complied. Allen did not ask who she was voting for but Moses and Morise told her she was voting for Hall, King and a policeman. When she was finished voting she handed the ballot card to Moses.

Addie Parker is an elderly woman who cannot read or write. Morise King and two other unidentified persons took her to register to vote. When she got to the registration place she was asked to sign a piece of paper which she did by making her mark. She made no other marks on the form. She did not indicate to anyone that she expected to be absent from the county on election day. Parker received a brown envelope in the mail. She wanted to throw it in the trash but was told by an unidentified person or persons that she needed the envelope so she could vote to have trash hauled from her yard. The King brothers happened by shortly thereafter. Parker testified that Morise told her how to use the ballot and where to punch. He told her she was voting to move heavy trash off her yard. After she voted, Morise picked up the envelope.

We find the evidence sufficient to support conviction of the defendants on counts III, IV and IX as well as to support the submission of the verdict directors on these counts.

■ The defendants also seek to have their convictions reversed on the grounds that the evidence is confusing, contradictory and unclear. While we recognize that some of the inerudite and aged witnesses' testimony was indeed, difficult to follow, we are mindful of the fact that the jury was able to reach a verdict based on the totality of the evidence. Credibility of the witnesses and weight to be given to their testimony is to be decided by the jury, not this court. *Brown*, 665 S.W.2d at 958. Further, defendants point us to no authority that mandates reversal of a criminal conviction on the ground that some of the evidence is "confusing." Point denied.

■ Defendants' second point claims that the trial court erred in denying their motion to quash the jury panel. Defend-

ants argue that the prosecutor used her peremptory challenges to exclude all black venirepersons and that such a use of peremptory challenges was improper and racially motivated. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) the Supreme Court recognized that a state denies a black defendant the equal protection of the law when it puts him on trial before a jury from which the members of his race have been excluded through the use of peremptory challenges. In that case the court articulated a three part test to determine whether a prosecutor's use of peremptory challenges creates a *prima facie* case of purposeful discrimination. First, the defendant must show that he or she is a member of the same racial group as the jurors who were excluded. Second, the defendant may rely on the undisputed fact that peremptory challenges constitute a jury selection practice that permits discrimination. Finally, the defendant must show that these facts and all relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen from the jury on account of their race. *Batson*, 106 S.Ct. at 1723.

In the case before this court, the defendant has complied with the first two parts of the *Batson* test. First, the defendants showed that they were members of the same racial group as the five blacks that were eliminated from the jury panel through the prosecutor's use of peremptory challenges. Second, the defendants are entitled to rely on the presumption that the peremptory challenge constitutes a jury selection process that permits discrimination. The significant inquiry, then, is based on the third part of the *Batson* test: whether these facts, along with other relevant circumstances, raise an inference of racial discrimination. In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a pattern of strikes against black jurors or statements and questions made by the prosecutor during *voir dire* and in exercising his challenges may support or refute an inference of discriminatory purpose. Additionally,

and perhaps most important, the *Batson* court expressed confidence in the experience of the trial judge in supervising *voir dire* and to his ability to decide if the prosecutors use of his peremptory challenges creates a *prima facie* case of racial discrimination. *Id.* We are, therefore required to afford great deference to the trial judge's decision on this issue.

In the instant case we recognize the superior vantage point occupied by the trial judge. He was able to view the panel members; listen to their responses; analyze and supervise the statements and questions made by the prosecutor during *voir dire* and evaluate the reasons the prosecutor offered for exercising her peremptory challenges as she did. The trial judge found no discriminatory exclusion. Upon review of the record we find no statements or questions by the prosecutor or any other relevant circumstances to support an inference of discrimination. The defendants have failed to make out a *prima facie* case of purposeful discrimination.

Even if the defendants had made the requisite showing, they still could not succeed under *Batson*. When the defendant makes a *prima facie* showing, the burden shifts to the state to come forward with a neutral explanation for challenging black jurors. At the close of *voir dire* the following proceedings were held *in camera:*

MR. KNAPPENBERGER: ... the defendants' position is the only remaining blacks on the panel are those five individuals. I would make a motion, based on a recent Supreme Court decision ... that the State has struck these five individuals for reasons that could only be ascribed to color, and the fact, of course, the three individuals in the defendants' case are also black, or the negro race, and I challenge the State of Missouri to give the Court a legitimate reason why they were struck, other than they were black, and I therefore make a motion for a mis-trial based on the conduct of the Prosecuting Attorney striking the blacks for racial motivated reasons, for no other good legitimate reason.

MRS. BIRMINGHAM: Your Honor, I am not sure what to say. I will go through the list of strikes, as Mr. Knappenberger has pointed out, and those were five of the State's eighteen strikes.

JUROR NO. 7 knew an elected official in a political case, and in a sense has dealt with the election process, and one of the defendants is a former elected official, I don't think anyone should be on the jury who knows elected officials personally.

JUROR NO. 8 is from St. Louis, new from St. Louis and did not indicate to me that he particularly cared about the system, didn't think the charges were serious enough, and I didn't like the way he answered the questions.

JUROR NO. 13, must have rolled her eyes six or seven times. [sic] seemed like she was bored with the entire process. I asked all the people on the panel, I wanted to know who was going to be listening to the evidence, and I explained it in detail, asking if they could listen to the evidence, and I explained it in detail, asking if they could listen to the evidence, and I didn't like the look of the witness, was not sure she wasn't going to turn off and not listen.

JUROR NO. 19's eyes were closed, and I thought I was putting her asleep during the entire questioning, and may or may not have been aware of what was going on in the courtroom.

JUROR NO. 27 raised her hand as not being a registered voter, and my impression not being a registered voter, didn't care about the system, the election process.

THE COURT: The record will show that the objections of the defendants are denied.

The *Batson* court recognized that the prosecutor's explanation need not rise to the level justifying a challenge for cause. *Batson*, 106 S.Ct. at 1723. Nor must the reasons given be concrete or objective. *State v. Jones*, 747 S.W.2d 229, 232 (Mo. App.E.D.1987). Rather the prosecutor need only give a clear and reasonably spe-

cific explanation of his legitimate reasons for exercising the challenge which is related to the case to be tried. *Id.* 106 S.Ct. at 1723 n. 20.

In the instant case, the trial judge supervised *voir dire* and accepted the prosecutor's reasons for exercising her peremptory challenges the way she did. After a review of the record and affording the trial court due deference, we find that the ruling of the experienced trial judge is not erroneous and the defendants' point is denied.

Defendants fourth point is divided into five subparts, but after sifting through a quagmire of confusing legal argument it appears that the defendants contend that Instructions 11, 14, 23 and 24 were in err in three ways. First, defendants charge that the above instructions did not follow the statutes from which they were derived and as a result fail to inform the jury of the applicable law. The submission of such instructions, it is argued, constituted prejudicial error. We disagree.

■ The ultimate test of accuracy for a jury instruction is whether it precisely follows the substantive law and whether it will be correctly understood by a jury of lay people. *State v. Davis*, 675 S.W.2d 652, 656 (Mo.App.1984); *State v. Harris*, 636 S.W.2d 403, 406 (Mo.App.1983). A verdict directing instruction must contain each element of the offense charged and require a finding of all the constituent facts to support a conviction. *State v. Rodgers*, 641 S.W.2d 83, 83 (Mo. banc 1982).

Instructions 11 and 14 submit Counts III and IV and are based on alleged violations of Sections 115.277 and 115.279. A voter is eligible to vote by absentee ballot if he "expects to be prevented from going to the polls to vote on election day due to: (1) absence on election day from the jurisdiction in which he is registered to vote; (2) illness or physical disability; (3) religious belief or practice ..." RSMo Section 115.-277(1). Section 115.279(4) provides that "any person who knowingly makes, delivers or mails a fraudulent absentee ballot application shall be guilty of a class one election offense."

■ Defendants argue that under *State v. Redpath,* 668 S.W.2d 99 (Mo.App.1984) the voters expectations regarding absence or disability on election day are not an element of the offense of making a fraudulent absentee ballot application, and any reference to the voters expectations renders the instruction erroneous. This is a misstatement of the law. In *Redpath,* a jury found the defendant guilty of knowingly delivering a fraudulent absentee ballot application in violation of RSMo Section 115.279(4). The court found the *indictment* faulty in that it failed to refer to the voters expectation of being unable to go to the polls due to illness. The court stated that "[t]he statutes do not require the voter to entertain a *good faith expectation,* but simply allow the voter to state that he expects to be ill or disabled." *Id* at 103 (emphasis added). Clearly, the instructions given conform to the statutes involved as well as case law and served to properly inform the jury of the law necessary to reach a verdict.

Defendants urge that Instructions 23 and 24 do not conform to the law and failed to instruct the jury on the applicable law. Those verdict directors were submitted for Count IX which relates to the unlawful assistance of a voter as prohibited by Section 115.291(1) which provides:

. . . . .

If the voter is blind, unable to read or write the English language, or physically incapable of voting his ballot, he may be assisted by a person of his own choosing. Any person assisting a voter who is not entitled to such assistance, and any person who assists a voter and in any manner coerces or initiates a request or a suggestion that the voter vote for or against or refrain from voting on any question, ticket or candidate, shall be guilty of a class one election offense.

Instruction 23 in pertinent part submits:

. . . . .

First, that on or about March 22, 1985, in the County of St. Louis, State of Missouri, defendant Moses King, acting together with Morise King *assisted* Annie Mae Allen in voting by *suggesting which candidate* Annie Mae Allen should vote for on her ballot . . .

Instruction 24 in pertinent part submits:

. . . . .

First, that on or about March 22, 1985, in the County of St. Louis, State of Missouri, defendant Morise King *assisted* Annie Mae Allen in voting by *suggesting which candidates* Annie Mae Allen should vote for on her ballot . . .

■ As we interpret it, RSMo Section 115.291(1) can be violated in three ways: (1) when the defendant assists a voter who is not entitled to receive assistance (i.e. voter, to receive assistance, must be "blind, unable to read or write the English language, or physically incapable of voting his ballot"); (2) when the defendant assists a voter (who is entitled to assistance) and in any manner coerces a voter to vote for or against or refrain from voting on any question, ticket, or candidate; and (3) when the defendant assists a voter (who is entitled to assistance) and in any manner initiates a request or a suggestion that the voter vote for or against or refrain from voting on any question, ticket, or candidate.

■ Defendants argue that the requirements of assisting and suggesting must be broken down into two parts. While this court may have phrased the Instructions differently, substituting "and" for the word "by," the choice of words is purely of semantic and not of practical significance. The instructions given require that the jury find defendants both assisted and suggested. If one of these were not found, there would be no conviction under the instruction as given to the jury. Defendants further urge that the instruction is fatally flawed because it did not require the jury to find the defendant "initiated" a suggestion. It is difficult to see how the addition of the word "initiated" would change the effect of the instruction. The lack of the word "initiating" is of no practical significance and we deem it non-prejudicial.

In the second part of their fourth point, defendants argue that there are several fatal variances between Counts III and IV of the indictment and Instructions 11 and

14 that justify a reversal of defendant Hall's conviction or, in the alternative, a new trial. First, the indictment states "defendants knowingly made *and* delivered *and* mailed ...," while the statute is framed in the disjunctive. Instructions 11 and 14 submit only "made" as the offensive act.

■■■ Where a statute prohibits an offense that may be committed in different ways, the commission of the offense may be charged in a single count with the conjunctive "and" being substituted for the disjunctive statutory word "or" and proof of the offense by any of the acts by which it may be committed will sustain the charge. *State v. Garrette*, 699 S.W.2d 468, 505 (Mo.App.1985); *State v. McMilian*, 649 S.W.2d 467, 471 (Mo.App.1983). When a crime may be committed by any of several methods, the information must charge one or more of the different methods and the method submitted in the verdict directing instruction must be among those alleged in the information. *Garrette*, 699 S.W.2d at 505; *McMilian*, 649 S.W.2d at 471. Since the method submitted in the verdict director was among the acts prohibited by the statute and charged in the indictment, the instruction was not erroneous.

■■■ Second, the indictment specifies that the application was made on "behalf of" the voter, while the instruction states "in the name of." Finally, the instruction requires the jury to find that the defendants acted without the "knowledge, authority *and* ratification" of the voter, while the indictment charges that the defendant acted without the "knowledge, authority *or* ratification of [the voter] in so indicating." (Emphasis added).

In order for a variance to be fatal, the instruction must have submitted a new, separate and distinct offense. *State v. Hubbard*, 698 S.W.2d 908, 914 (Mo.App. 1985); *State v. Felks*, 672 S.W.2d 722, 724 (Mo.App.1984). Clearly, the variances between the instructions and indictment, if they are variances at all, are not fatal since they do not submit a new, separate and distinct offense from the one charged in the indictment.

■■■ Finally in their fourth point on appeal, defendants contend that the terms "knowledge," "authority," "ratification" and "knowingly" which are contained in instruction 11 and 14 "cry out for explanation and definition." We heard no such cries. Further, defendants argue that "all of these were requested by Defendants and denied." Although during the instruction conference, defendant's counsel said, "I think some definition instruction is necessary in regard to [knowledge, authority, and ratification]," we are unable to find that defendant complied with Rule 28.02(b), which requires counsel to "submit to the court instructions and verdict forms which the party requests be given." *See also* Notes on Use 4 to MAI–CR2d 33.00. No such request was made.

The offense referred to in Instructions 11 and 14 is a non-MAI offense. Accordingly, there are no appropriate Notes on Use that expressly require definition of these terms. Failure to define those terms, absent a proper request, did not constitute error; further, defendants have not shown that they suffered any prejudice as a result of those terms not being defined. Point denied.

In their fifth point on appeal, defendants claim that there was a fatal variance between the dates alleged in the indictment and verdict directors and the date as shown by the evidence adduced at trial. Counts III and IV of the indictment charge the defendant Hall with making a fraudulent absentee ballot application. The indictment and the relevant verdict director state that the acts constituting that offense occurred on or about March 22, 1985. The evidence adduced at trial showed that March 22, 1985 was merely the date that the application for the absentee ballot was received by the Board of Election Commissioners. Similarly, the indictment and the relevant verdict director state that the incidents alleged in Count IX, which charge defendants Moses and Morise King with the improper assistance of a voter occurred on or about March 22, 1985. The evidence at trial revealed that March 22, 1985 was the date on which the ballot envelope was notarized.

With respect to Counts III and IV, defendants argue that if the applications were received by the board on March 22, 1985, they would have been mailed no later than March 21, 1985. Similarly, if fraudulent applications were alleged to have been made on March 22, 1985, the improper assistance of these voters as charged in Count IX could not have occurred on March 22, 1985. Defendants also claim that since each defendant interposed an alibi defense, precision in regard to dates is critical. Based on the foregoing, defendants argue that these variances are fatal and urge this court to set aside their convictions or, in the alternative, remand the case for a new trial. We decline to do so for the reasons set forth below.

A variance occurs when the essential elements of the offense set forth in the indictment are left unaltered but the evidence at trial proves facts that are *materially* different. *U.S. v. Salinas*, 654 F.2d 319, 324 (5th Cir.1981) *quoting Gaither v. U.S.*, 413 F.2d 1061, 1071 (DC Cir. 1969). (Emphasis added). Generally, a variance between allegations in the indictment and proof at trial is not fatal and will not compel a reversal absent a showing of actual prejudice to the defendant. *State v. Douglas*, 720 S.W.2d 390, 393–394 (Mo.App. 1986); *State v. Jarrett*, 481 S.W.2d 504, 509 (Mo.1972); *U.S. v. Begnaud*, 783 F.2d 144, 148 (8th Cir.1986). The true inquiry is not whether there has been a mere variance, but whether the variance substantially affected the substantive rights of the accused by failing to appraise the defendant of the charges he had to meet at trial. *Berger v. U.S.*, 295 U.S. 78, 82, 55 S.Ct. 629, 630–31, 79 L.Ed. 1314 (1934); *U.S. v. Gaultier*, 727 F.2d 711, 714 (8th Cir.1984). *Begnaud*, 783 F.2d at 148.

The indictment here charges that the incidents referred to in Counts III, IV and IX occurred "on or about March 22, 1985", not "on March 22, 1985" as defendants argue. The phrase "on or about" a date means approximately that date. *State v. Newhart*, 539 S.W.2d 486, 490 (Mo.App. 1976). Since the date alleged in the indictment was, by its own terms a mere approx-

imation, it is not unreasonable to assume that the defendants could anticipate that the evidence adduced at trial would show that the offenses charged occurred during a reasonable period before or after March 22, 1985. Thus the variance between the indictment and the evidence adduced at trial is not fatal.

Our study of the record reveals nothing that would lead us to conclude that the defendants were actually prejudiced by the use of the phrase "on or about March 22, 1985" in the instruction. It is interesting to note that several instructions tendered by the defendants at the instruction conference, in particular the instruction submitting Count IX, stated the time of the offense to be "on or about March 22, 1985." Since the defendants were fairly appraised of the charges they had to meet at trial, and made no showing of actual prejudice, we find that the above variances were not fatal.

Nor does the phrase at issue render the indictment defective. The test of the sufficiency of an indictment is whether it contains all essential elements of the offense as set out in the statute and clearly appraises the defendant of the facts constituting the offense so as to enable him to prepare a defense and to bar future prosecution for the same offense. *Hulstine v. State*, 702 S.W.2d 120, 122 (Mo. App.1985). RSMo Section 545.030 states:

1. No indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected:

. . . . .

(5) For omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense; nor

(6) For stating the time imperfectly;

. . . . .

An indictment is not defective for alleging that a crime occurred on or about a certain date. *State v. Baker*, 676 S.W.2d 900, 902 (Mo.App.1984). Moreover, an indictment need not specify the time of the offense

where time is not of the essence. *State v. Clark*, 509 S.W.2d 740, 743 (Mo.App.1974); *State v. Ellis*, 710 S.W.2d 378, 383 (Mo. App.1986); RSMo Section 545.030.1(5). Defendants offer no authority that declares time is of the essence in either of the offenses charged nor does our research reveal any such authority. We conclude under the facts of this case that the indictment stated with sufficient specificity the time the offense occurred.

■ Defendants further contend that under *Clark*, pinpointing the dates of the offense charged is vital when alibi witnesses are endorsed. Count III and IV concern the making of fraudulent absentee ballot applications. The indictment charges that the acts alleged in these counts took place "on or about March 22, 1985." Count IX involves the unlawful assistance of voter Annie Allen. The indictment alleged that this incident occurred "on or about March 22, 1985." Although the defendants argue vigorously about the importance of detailing the specific time of the occurrence, our review of the record shows no evidence that the defendants filed a motion for a bill of particulars. Rule 23.04. The use of this rule is to give the accused the opportunity to "sufficiently prepare his defense." Obviously if the defendants were relying on alibi as a defense it is their responsibility to pursue an accurate time if they are not satisfied with the charging document. The defendant's failure to file a motion for a bill of particulars waive their right to complain now of a lack of detail in the indictment. *State v. Baker*, 676 S.W.2d 900, 902 (Mo.App.1984). Defendants' fifth point is denied.

■ In their sixth point on appeal defendants Moses and Morise King charge that the trial court committed prejudicial error in refusing to give instructions C and D submitting Count IX of the indictment concerning the unlawful assistance of a voter. They allege that those instructions properly submit a lesser included offense to those charged in Count IX of the indictment and therefore the trial court was required to instruct the jury as to those offenses. Instructions C and D submit an offense based on Section 115.635(8) which states in pertinent part:

The following offenses, and any others specifically so described by law, shall be class three election offenses and are deemed misdemeanors connected with the exercise of the right of suffrage. Conviction for any of these offenses shall be punished by imprisonment of not more than one year or by fine of not more than two thousand five hundred dollars, or by both such imprisonment and fine:

... (8) Assisting a person to vote knowing he is not legally entitled to such assistance, or while assisting a person to vote who is legally entitled to such assistance, in any manner coercing, requesting or suggesting that the voter vote for or against or refrain from voting on any question, ticket or candidate....

Instructions 23 and 24 are the verdict directors that submit Count IX and are based on Section 115.291(1) which reads in pertinent part:

If the voter is blind, unable to read or write the English language, or physically incapable of voting his ballot, he may be assisted by a person of his own choosing. any person assisting a voter who is not entitled to such assistance, and any person who assists a voter and in any manner coerces or initiates a request or a suggestion that the voter vote for or against or refrain from voting on any question, ticket or candidate, shall be guilty of a class one election offense.

Section 115.291 applies only to the unlawful assistance of a absentee voter while Section 115.635 is not so limited. Respondent urges that Section 115.635 is not a lesser included offense of Section 115.291 and therefore the count did not err in refusing the proffered instruction. We agree.

■ In *State v. Olson*, 636 S.W.2d 318 (Mo. banc 1982) the Supreme Court of Missouri abolished mandatory instructing down in non-homicide cases. A defendant may not fault a trial court for failing to give a lesser included offense instruction unless he specifically requests it. *State v. Smith*, 686 S.W.2d 43, 45 (Mo.App.1985);

*State v. Johnson,* 719 S.W.2d 51, 52 (Mo. App.1986). In the instant case, defendants did request instructions C and D but they were refused by the trial court. Therefore, the sole inquiry is whether Section 115.635 is indeed a lesser included offense of Section 115.291.

For an offense to be a lesser included, the greater of the two offenses must encompass all the legal and factual elements of the lesser. *State v. Boschert,* 693 S.W.2d 128, 129 (Mo.App.1983); *State v. Van Doren,* 657 S.W.2d 708, 715 (Mo. App.1983). The lesser is not included in the greater unless it is impossible to commit the greater without first committing the lesser. *State v. Seddens,* 624 S.W.2d 470, 473 (Mo.App.1981). In order to determine whether a lesser included offense exists the court will focus on the statutory elements of each offense. *State v. Gobble,* 675 S.W.2d 944, 948 (Mo.App.1984); *Van Doren,* 657 S.W.2d at 715. The statutory elements test was set out in *State v. Amsden,* 299 S.W.2d 498, 504 (Mo.1957):

> If the greater of the two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater.

Applying this test to the statutes before us we conclude that the elements necessary to prove a violation of Section 115.635 are not included in Section 115.291. A violation of the purported "lesser" offense requires that a finding that the person lending assistance to the voter *know* that the voter is not legally entitled to assistance. Conviction under the "greater" requires no such finding. We find that Section 115.635 is not a lesser included offense of Section 115.291. Accordingly we conclude that the trial court did not err in refusing Instructions C and D tendered by the defendants.

In their seventh point on appeal, defendants claim that the trial court committed prejudicial error in refusing to give Instruction E. They contend the instruction properly set forth the law necessary to guide the jury and failure to give that instruction constituted reversible error.

The offense charged in Count IX is a non-MAI offense. Where there is no applicable MAI–CR form, the modified form or not-in-MAI–CR form shall be simple, brief, impartial and free from argument. *State v. Williams,* 700 S.W.2d 541, 543 (Mo.App. 1985). V.A.M.R. Section 28.02 provides that a court must instruct the jury on all questions of law necessary for its guidance in rendering a verdict. The pivotal question in this point on appeal is whether Instruction E is a correct statement of the law.

Count IX is based on RSMo Section 115.291(1). Instruction E reads in its entirety:

> As to Counts VIII, IX, X and XII, you are instructed that the law does not require a voter to entertain a good faith need for assistance in voting an absentee ballot. If you find that a voter requested assistance, or assented to assistance, as to any of those Counts, you must find the defendants not guilty of that Count whether or not the individual voter was in fact blind, unable to read or write the English language, or physically incapable of voting her ballot.

In their brief the defendants state that Instruction E is based on authority set forth in *Redpath* and *In the Matter of Rodriguez,* 558 S.W.2d 356 (Mo.App.1977); in particular defendants rely on the following passage in *Redpath,* 688 S.W.2d at 103:

> It should be noted, ... that neither Section 115.277 nor Section 115.279 includes an objective standard by which the truthfulness of a voter's expectation to be ill or disabled may be measured. The statutes do not require the voter to entertain a good faith expectation, but simply allow the voter to state that he expects to be ill or disabled.

Defendants analysis of *Redpath* and *Rodriguez* is flawed. *Redpath* involved only a violation of Section 115.279 which prohibits the making of a fraudulent absentee ballot. Clearly, the above language does not apply to violations of Section 115.291. *Rodri-*

*guez*, likewise, does not address the issue involved here.

Defendants also argue that the principle embodied in Instruction E follows from a reading of Section 115.291 and the election statutes as a whole. We derive no such principal from our reading of Chapter 115 of RSMo and of Section 115.291 in particular. We find that Instruction E was an erroneous statement of the law and was properly refused.

 In their eighth point on appeal defendants contend that the trial court committed prejudicial error in submitting Instruction 23 and 24 to the jury in that these instructions did not specify a minimum mental state as required under Chapter 562 of RSMo. They conclude that the submission of said instructions deprived defendants Moses and Morise King of due process in violation of the 4th, 5th, 6th and 14th amendments of the United States Constitution and the Missouri Constitution.

Although the instruction did not specify one of the mental states set forth in Section 562.016 RSMo (i.e. purposely, knowingly, recklessly, or criminal negligence), such a specific mental state is not always required to be set out in the instruction. *See, e.g.,* MAI–CR2d 20.02.1 (rape) and MAI–CR2d 19.02 (as it relates to assault by attempting to kill). Here, the instructions required the jury to find that the defendant "assisted [voter] in voting by suggesting which candidate [voter] should vote for on her ballot." Such specifically described actions sufficiently advised the jury of the elements of the offense. Point denied.

 Defendants argue in their first point on appeal that the trial court committed prejudicial error in submitting Instruction 11 and 14 to the jury in that said instruction did not require unanimity in the verdict. However, the allegation of error did not appear in defendants' motion for new trial in violation of V.A.M.R. 29.11(d) and is not preserved for review. We find no plain error. V.A.M.R. 30.20.

 Defendants finally argue that the verdicts as to Counts III, IV, VIII and IX are "extremely inconsistent." They ask this court to reverse their convictions on that basis. Defendants fail to support their argument by citation of authority in violation of V.A.M.R. 30.06(d). Absent proper explanation as to why authority is unavailable, points relied on without citation of authority are deemed waived or abandoned. *State v. Boswell,* 715 S.W.2d 582 (Mo.App.1986); *State v. Bailey,* 672 S.W.2d 682, 683 (Mo.App.1983).

We affirm the judgment of the trial court.

STEPHAN, P.J., and DOWD, J., concur.